327 So.2d 76 (1976)
FARMHAND, INC., a Delaware Corporation, Appellant,
v.
Gene S. BRANDIES, Jr. and Gene S. Brandies, Sr., Appellees.
No. Y-4.
District Court of Appeal of Florida, First District.
February 11, 1976.
Rehearing Denied February 18, 1976.
William M. Howell, of Howell, Kirby, Montgomery, D'Aiuto & Dean, Jacksonville, for appellant.
Hugh M. Davenport, of Smith, Davenport & Peek, Jacksonville, for appellees.
SMITH, Judge.
This case severely tests the doctrine that there is no actionable negligence in manufacturing, nor any implied warranty of general fitness in selling, a machine whose formidable dangers, negligently created, are open and obvious. Farmhand invokes that rule on this appeal from money judgments awarded appellees for personal injury sustained by Brandies, Jr.
Gene Brandies, an 18-year old farmboy, worked daily with a Farmhand Feedmaster model F81-C drop feeder at Carter's dairy. He knew well how it operates. Taking *77 power from a tractor, it receives, mixes and discharges feed by means of augers which rotate at high speed in cylindrical housings. Feed is thus received, propelled into a mixing tank, mixed and forced up to a drop point where it falls through a chute into a hopper welded to a discharge sleeve several feet long. A discharge auger rotates within that hopper and sleeve.
The hopper is box-shaped, 10 inches or so wide, about 20 inches long, and open at the top to receive falling feed. Just inches below the top of the hopper, the discharge auger whirls at 380 rpm to force feed through a hole in the hopper, cut round in the circumference of the auger, and thence through the discharge sleeve to its destination at a sack or trough several feet away. The hopper is waist high to an operator standing near the clutch handle which engages the discharge auger. To one standing in that position, the auger is exposed in the hopper; it is readily visible and, in operation, openly and obviously dangerous. Gene Brandies, who grew up on a farm, had "seen enough of it," in his words, to know that it was dangerous. He knew "not to put my hand in there."
One day, however, that is what he did. He and Carl Smith were sacking cornmeal for sows in the farrow barn. Smith was in the barn filling sacks with meal which flowed from the discharge sleeve. Brandies stood outside, his back to the Feedmaster. With his right hand on the clutch handle he regulated the flow of cornmeal as the sacks were filled by Smith; with his left he steadied the shanking discharge assembly. His left hand dropped into the hopper. In a split second, the whirling blade of the auger pulled his fingers, then his hand and forearm through the pinch point at the end of the hopper and tightly into the discharge sleeve. The auger mangled Brandies' hand before Smith could run out of the barn and throw the clutch handle.
The Brandies claims against Farmhand, predicated on the absence of a simple guard plate which could have partially closed the hopper and deflected a hand being drawn to the pinch point, were submitted to a jury on counts of negligence and implied warranty of merchantability. The trial judge eliminated a count predicated on § 402A, Restatement (Second) of Torts.[1] Farmhand appeals judgments entered on substantial verdicts for the plaintiffs, who cross-assign error in the trial court's dismissal of their count based on Restatement § 402A.
Farmhand urges that, on the evidence and under the court's charge, the jury could not properly have found that "the specific danger to be avoided" was not "obvious to all," nor that "the particular dangerous condition" was not "open and obvious" to one exercising reasonable care for his safety, nor that "the alleged defect" was not "discoverable by simple observation," nor that "the alleged danger" was not "an open and obvious condition." The court's charge on the critical question was:
"The manufacturer of a product has a duty to use reasonable care. Thus if a manufacturer of a chattel makes a machine or design which causes it to be dangerous for the uses for which it is manufactured, he is subject to liability to others whom he should expect to use the chattel lawfully or be in the vicinity of its probable use for bodily harm caused by defendant's failure, if any, to exercise *78 reasonable care in the adoption of a safe plan or design.
"In order to recover damages for alleged negligent design of a product, the article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it with the ordinary knowledge in the community as to its characteristics.
"It is not in itself a breach of duty to supply a product which is reasonably safe ... [as] customarily used even though it might conceivably be made more safe. Nor must a manufacturer make his product more safe when the specific danger to be avoided is obvious to all.

"You are further instructed with regard to the plaintiff's claim of alleged inadequate warning that notice of warning is not required where the particular dangerous condition is open and obvious to the person who is exercising reasonable care for his own safety. One who fails to pay any attention to what he is doing is not relieved of his duty to exercise due care for his own safety under the circumstances. The manufacture and sale of a product creates ... [by] operation of the law an implied warranty by the manufacturer that the product is reasonably safe for the uses for which it is manufactured and sold.
"If the product is defective in design or manufacture so as to render it dangerous or unfit for its intended use, the manufacturer may be liable for bodily harm to persons who would reasonably be expected to use the product where such harm is ... proximate[ly] cause[d] by the defective design or manufacture while the product is being properly put to its intended use.
"If the alleged defect is discoverable by simple observation then the law will imply no warranty against the existence. There can be no liability on the part of the manufacturer of a product for injuries sustained by a person who was aware of the operating characteristics of a machine or where the alleged danger was an open and obvious condition or where the plaintiff had actual knowledge or in the exercise of reasonable care, should have had knowledge of the alleged dangerous condition." (Emphasis added.)
The concepts expressed in the trial court's charge are those which Florida appellate courts have melded, beginning with Matthews v. Lawnlite Co., 88 So.2d 299, 301 (Fla. 1956), into a practically indivisible concept of liability involving both negligence and implied warranty. The Supreme Court stated in Matthews:
"An implied warranty does not protect against hazards apparent to the plaintiff... . It does not protect against injury imposed while carelessly using a dangerous mechanism." 88 So.2d at 301.
While the Court expressed itself as approving the Restatement of Torts § 398 formulation that a manufacturer is responsible to a foreseeably injured person for failing to use "reasonable care in the adoption of a safe plan or design," the Court inverted the Restatement's apparent purpose to make knowing use of a dangerous machine a matter of affirmative defense.[2] Although the Matthews opinion thus spoke by dictum, the Court unmistakably made plaintiff's knowing exposure to open hazards an exception to defendant's liability, as in the case of an owner of land where a *79 dangerous condition exists openly and obviously.[3]
In Green v. Tobacco Co., 154 So.2d 169, 172 (Fla. 1963), the Supreme Court emphasized the same concept when answering a certified question concerning the state of Florida law on implied warranties of merchantability or general fitness:
"If the defect is discoverable by simple observation then the law will imply no warranty against its existence."
The same theme was repeated in Royal v. Black and Decker Mfg. Co., 205 So.2d 307, 309-10 (Fla.App.3d, 1968), cert. den. 211 So.2d 214 (1968), involving alternate theories of negligence and warranty:
"The primary concern is to protect the user from the unreasonably dangerous product or from one fraught with unexpected dangers... .
"... No allegations of any latent characteristics are made... . There are similarly no allegations that the plug ... contained a latent functional defect.
"... [N]or must the manufacturer make his product `more' safe when the danger to be avoided is obvious to all. See Evans v. General Motors Corporation, 359 F.2d 822 (7th Cir.1966); Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802 (1950)." [Emphasis in original.]
This Court approved Circuit Judge Taylor's similar expressions in a case involving asserted warranty and negligence liability for personal injuries resulting from fire in a Bobcat front-end loader. Fletcher Co. v. Melrose Mfg. Co., 238 So.2d 142, 147 (Fla.App.1st, 1970):
"`When a buyer examines the goods ... before buying there is no implied warranty against defects which an examination ought to reveal. The alleged defects in the design of the Bobcat were obvious upon the most casual observation of the engine. The location of the fuel line takeoff from the gasoline tank and the nature and location of the fuel line were readily apparent... . [Plaintiff] cannot now be heard to assert ... an implied warranty against alleged defects in such obvious features of the Bobcat.'"
And the District Court of Appeal, Third District, found the same doctrine dispositive of Reyes v. Zbin, 217 So.2d 150, 151 (Fla.App.2d, 1969), apps. dism. 225 So.2d 530 (1969), involving asserted negligence by a retail lessor of a pulverizing machine in failing to warn plaintiff "that when the machine was turned off the rotating blades would continue to operate for a period of time." The court held that the complaint was properly dismissed:
"Nowhere is it suggested that plaintiff was unaware of the operating characteristics of the machine. Nowhere is it suggested that the feature of the machine in question was latent. Nowhere is it suggested that the rotating blades were not in plain sight. Nowhere is it indicated that plaintiff did not have actual or constructive knowledge of the dangerous condition of which he now complains."
While one of these decisions might be distinguished as not involving manufacturer's liability and others may be minimized as containing only dicta on the point in issue here, Brandies must reckon with precedents that so clearly and persistently repeat the theme of nonliability for injuries resulting from obvious dangers.
Resourcefully, Brandies' counsel argues that the boy merely knew of the source of *80 the danger, not of the danger itself, and that his admitted consciousness of the danger of the whirling auger was not a particular, discriminating awareness that the auger blade would draw his hand into the pinch point where the hopper and sleeve joined. The extent of Brandies' appreciation of the danger was therefore a jury question, he argues, as are similarly close questions involving a landowner's liability or assumption of risk. 1661 Corp. v. Snyder, 267 So.2d 362, 364 (Fla.App.1st, 1972) (new trial for a plaintiff against a landowner when there was conflicting evidence of whether the water pipe over which she stumbled was "patent, obvious, visible, and open to ordinary observation by anyone"); Lora v. Maule Industries, Inc., 235 So.2d 743 (Fla.App.3rd, 1970) (assumption of risk requires appreciation of the nature, character and extent of the danger); Watson v. Drew, 197 So.2d 53 (Fla.App.4th, 1967) (assumption of risk defense requires showing that plaintiff knew of the "very hazard" and appreciated its danger); Atlantic Coastline Ry. v. Gary, 57 So.2d 10 (Fla. 1952) (knowledge that a rack would descend in forty seconds was not equivalent to knowledge and appreciation that it would plummet); Landry v. Sterling Apts., Inc., 231 So.2d 225 (Fla. App.4th 1970), cert. den. 238 So.2d 107 (1970) (plaintiff's knowledge of trash and ice in the vicinity was not specific knowledge of the slippery substance on which he was about to fall); Williston v. Cribbs, 82 So.2d 150 (Fla. 1955) (a jury question whether the decedent appreciated the danger of electrocution when he knew and took steps to avoid wires lying across the roof).
Notwithstanding some similarities with the cases cited, we cannot slice the evidence here finely enough to sustain Brandies' judgment on the theory under which it was obtained. An auger whirling at high speed in a steel hopper is self-evidently dangerous. Merely seeing it, or even reading about it, provokes an ominous apprehension of its threat to stray fingers. If young Brandies did not particularly envision that the auger was capable of propelling his hand laterally into the pinch point, he certainly could imagine the mauling that would result from dropping his hand between the auger blade and the side of the hopper. We cannot sensibly hold that Brandies was required to protect himself from the latter danger but not from the former.
With the thorough assistance of counsel we have surveyed case reports and the literature for vindication of the trial court's decision to let the jury decide whether the danger of that auger was somehow veiled. We have found none. Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802, 804 (1950) is the classic and much-discussed[4] statement of the rule that
"... the manufacturer is under no duty to render a machine or other article `more' safe  as long as the danger to be avoided is obvious and patent to all."
Campo dismissed the complaint of a worker whose hands were caught in the revolving steel rollers of an onion-topping machine manufactured by the defendants. Despite allegations that defendants were negligent in failing to supply a wholly feasible *81 and practicable guard that would prevent workers from coming in contact with the rollers, the court held that the danger complained of was obvious and therefore not actionable.
Krugh v. Miehle Co., 503 F.2d 121, 127 (6th Cir.1974), supplies the most finely drawn rationale we have found for letting a jury decide whether the danger to Brandies was latent or obvious. Krugh's hand was crushed while he was cleaning two counter-rotating printing drums. A button was supplied to rotate the drums slightly for cleaning purposes, but the drums tended to coast after the button was released. The court concluded that a jury might properly find that:
"... although Krugh was aware that injury could result if his hand were caught in the `pinch point', he was unaware of the propensity of the transfer drums to coast to the extent that they did. Accordingly, [the jury] could have determined that a warning or safety device was required."
In the present case, on the other hand, no warning by way of decal or otherwise could have added to Brandies' complete consciousness of the danger. That Brandies or any of us may in our preoccupation momentarily forget a known danger does not, under Florida law, shift the risk of our distraction to another. Deane v. Johnston, 104 So.2d 3 (Fla. 1958); Bashaw v. Dyke, 122 So.2d 507 (Fla.App.1st, 1960); Allied Business Ass'n Inc. v. Saling, 227 So.2d 712 (Fla.App.4th, 1969).
Section 402A of the Restatement (Second) of Torts, supra n. 1, holds that a product in a defective condition, if unreasonably dangerous, is actionable. In courts to whom the Restatement rule seems a more rational expression of the common law, the obviousness of a dangerous condition to a machine operator is one but not the only factor determining whether the machine was "in a defective condition unreasonably dangerous to the user." The Restatement rule suggests that some conditions are so unreasonably dangerous that they cannot be safely encountered even with full appreciation of the risk. 2 Harper and James, supra n. 4, § 27.13; 1 Frumer and Friedman, supra n. 4, 118.8(16); Davis v. Fox River Tractor Co., 518 F.2d 481 (10th Cir.1975).
Substantial evidence supported the Brandies claims that an almost insignificant investment of effort and money by Farmhand could have produced a guard for the Feedmaster which would have shielded the discharge end of the hopper for several inches up to the pinch point. The jury could have found that such a guard would have blocked access to the pinch point and deflected stray fingers from the auger's swath. The guard would not have interfered with the flow of feed into and through the hopper, the mobility of the discharge arm or any other function of the Feedmaster. Farmhand adduced evidence that no other similarly-designed machine on the market when this model was manufactured had such a shielding device. There was also evidence, however, of contemporary design standards recommended by the American Society of Agricultural Engineers, that dangerous parts of feed conveyors and similar farm instruments be shielded to the extent consistent with the intended function of the machine. All of this evidence, though undoubtedly persuasive to the jury, is rendered irrelevant by the rule of law which requires us to reverse this judgment.
We may assume that the jury's verdict, though unresponsive to the court's charge and to Florida law as we understand it, was a statement that manufacturers should not be permitted to design, produce and market unreasonably dangerous machines with impunity. If industry standards require a guard or shield, or if design standards respected outside the industry do so, or if the risk is great that there will be *82 many small injuries or a few horrible ones as a result of some gaping danger in the machine's design, or if the cost in money or utility of eliminating an obvious danger is insignificant, then it should not seem surprising that a jury would regard the risk created as unreasonable and therefore actionable notwithstanding that predictable human carelessness on the part of a worker was also a causal event.
Whether the patent danger rule we here apply must give way to a different standard of manufacturers' responsibility is a question of great public interest. It and related questions concerning § 402A have been raised repeatedly in the district courts of appeal. See Royal, supra, 205 So.2d at 309; Barfield v. U.S. Rubber Co., 234 So.2d 374 (Fla.App.2d, 1970); Mattes v. Coca Cola Bottling Co. of Miami, 311 So.2d 417, 418 et seq. (Fla.App.4th, 1974) (dissenting opinion); Favors v. Firestone Tire & Rubber Co., 309 So.2d 69, 73-74 (Fla.App.4th, 1975) (dissenting opinion). Questions concerning § 402A are now under consideration by our Supreme Court (No. 46,709), on certification from the United States Court of Appeals for the Fifth Circuit. West v. Caterpillar Tractor Co., Inc., 504 F.2d 967 (5th Cir.1974). To those questions we add the following, certified pursuant to Art. V, sec. 3(b)(3), Florida Constitution:
May the manufacturer of a machine in a defective condition unreasonably dangerous to the user be held liable to an injured user notwithstanding that the condition was obviously dangerous?
Subject to our certification of the controlling question thus stated, we reverse the judgments below and remand the case so that judgment may be entered for appellant Farmhand.
Reversed.
RAWLS, Acting C.J., and MILLS, J., concur.
NOTES
[1] One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
"(a) the seller is engaged in the business of selling such a product, and
"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."
[2] Comment b to § 398, Restatement (First and Second) of Torts states: "If the dangerous character of the plan or design is known to the user of the chattel, he may be in contributory fault if the risk involved in using it is unreasonably great or if he fails to take those special precautions which the known dangerous character of the chattel requires." (Emphasis added).
[3] Hickory House, Inc. v. Brown, 77 So.2d 249 (Fla. 1955); Hall v. Holland, 47 So.2d 889 (Fla. 1950); Mai Kai, Inc. v. Colucci, 205 So.2d 291 (Fla. 1968); Quinnelly v. Southern Maid Syrup Co., 164 So.2d 240 (Fla.App.3d, 1964); Rist v. Fla. Power & Light Co., 254 So.2d 540 (Fla. 1971).
[4] Campo was cited with evident approval by the District Court of Appeal in Royal, 205 So.2d at 310. It has also been roundly criticized. 2 Harper and James, Law of Torts, 1542 (1956); 1 Frumer and Friedman, Products Liability, § 7.02 (1975); See also Noel, Manufacturer's Negligence of Design or Directions for Use of a Product, 71 Yale L.J. 816, 837-39 (1962). Significantly, the Judicial Conference which recommended to the New York legislature the comparative negligence statute which became effective September 1, 1975, stated that the "patent danger" rule of Campo "should be considered ... as a factor to be weighed by the trier of fact in determining whether to diminish damages." It remains to be seen whether New York courts will accept this transformation of the Campo rule from an exception to liability to a mitigating affirmative defense. 1 Frumer and Friedman, supra at 118.8(16).