347 So.2d 459 (1977)
Juanita WATSON, As Administratrix of the Estate of Charles R. Watson, Deceased, Appellant,
v.
LUCERNE MACHINERY AND EQUIPMENT, INC., and Central Florida Machinery Co., Inc., et al., Appellees.
No. 76-1550.
District Court of Appeal of Florida, Second District.
June 29, 1977.
David J. Williams and Craig M. Spanjers, Stanley, Durrance & Wines, Auburndale, for appellant.
John R. Bush, Macfarlane, Ferguson & Kelly, Tampa, for Central Florida Machine Co., Inc.
*460 J. Julian Bennett, Winter Haven, for Lucerne Machinery and Equipment, Inc., James M. Fiske and Fiske-Gay Associates, Inc.
SCHEB, Judge.
Charles R. Watson was accidentally killed in a citrus processing plant where he was employed, his head having been crushed by the rotating arm of a machine known as a "Kinsey Sampler." Watson's personal representative claimed the machine was defective and brought suit for damages against Lucerne Machinery & Equipment, Inc., the manufacturer of the machine; Fiske-Gay Associates, Inc. and James M. Fiske, the designers; Central Florida Machinery Co., the installer; and Royal Globe Insurance Co., the liability insurer for Central Florida Machinery Co. The trial court granted summary judgment in favor of all the defendants. This appeal by Watson's personal representative ensued. We affirm.
Watson had been employed by Alcoma as a utility man in its citrus processing plant in Polk County for approximately a year and a half before his death. The Kinsey Sampler in use in that plant was designed to statistically select fruit for sampling as the fruit passed through the machine on a conveyer belt. The sampling was necessary in order to meet the requirements imposed by the Florida Citrus Commission. On the day he was killed, Watson was assigned the task of assuring a smooth flow of fruit into some bins. This task was usually handled by another employee who was sick that day, but Watson had performed this same task in the past. The job did not require Watson to come any closer than 10-20 feet from where he met his demise. In fact, he had been warned by his supervisors to stay away from the machine because of the dangers involved during its operation. Watson, nevertheless, assumed the difficult task of crawling into the Kinsey Sampler, thereby exposing himself to the danger of the rotating sampler arm. Though there is some dispute as to whether the motion of the sampler arm was continuous or periodic, no one disputes that the sampler arm was clearly visible.
In opposition to the defendants' motion for summary judgment the plaintiff introduced an affidavit from an engineering expert, which said that "the guards and safety devices utilized in the construction and installation of the Kinsey Fruit Sampler were not adequate to provide reasonable protection to persons working in and around the said machine."
While not specifically mentioned by the trial judge, both sides agree that the trial court awarded summary judgment on the basis of the principle of law enunciated in Farmhand, Inc. v. Brandies, 327 So.2d 76 (Fla. 1st DCA 1976). In Farmhand the plaintiff, Brandies, was an eighteen-year-old farmer who operated a machine known as a "Farmhand Feed Master." The machine received and mixed feed by means of high speed rotating augers housed within a cylinder. To operate the machine it was necessary for Brandies to stand in close proximity to it. Although he was well acquainted with the danger of the whirring augers, one day Brandies' hand was mangled when he carelessly dropped it into the cylinder while the machine was in operation.
Brandies sued the manufacturer of the machine for damages. The evidence disclosed if a simple guard plate had been installed on the machine the accident would not have occurred. The jury found in favor of the plaintiff Brandies, but the First District reversed, holding that the manufacturer of the machine could not have been liable as Brandies knowingly exposed himself to a patently dangerous condition.
In the case now before us the trial judge apparently determined that the Kinsey Sampler presented such an obvious or patent danger, and since Watson was fully aware of that danger, that there was no legal basis for imposing liability on any of the defendants.
Appellant argues that the patent danger doctrine has been abrogated by West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976), wherein the Supreme Court *461 adopted the doctrine of strict liability in tort from the Restatement (Second) of Torts, Section 402(A).[1]
Though there is some language in Justice Adkins' opinion in West that could be construed as reducing the patent danger doctrine from an absolute defense to a factor to be considered in apportioning the damages, we note the opinion also states:
In order to hold a manufacturer liable on the theory of strict liability in tort, the user must establish the manufacturer's relationship to the product in question, the defect and unreasonably dangerous condition of the product, and the existence of the proximate causal connection between such condition and the user's injuries or damages. 336 So.2d at 87 (emphasis supplied).
So despite the adoption of strict liability in tort for defects in manufactured goods, we must still look in this case for the existence of proximate causation between the alleged defect and the death of Watson.
Watson had been warned previously by his supervisors to stay away from the Kinsey Sampler during its operation because of its dangerous nature. There was no evidence that Watson suffered from any physical or mental impairments and his job did not require him to attend the machine.
It appears to us that Watson's death was not a result of any defect in the Kinsey Sampler, but was solely caused instead by his own disregard of his supervisors' warnings to stay away from a machine which presented obvious dangers during operation. His job did not require him to be in the area where he was killed; in fact, he had to kneel down and crawl under a conveyer belt to get to where he was killed. As the Supreme Court said in West, "Strict liability does not make the manufacturer or seller an insurer." 336 So.2d at 90. See also Isaacs v. Powell, 267 So.2d 864, 866 (Fla. 2d DCA 1972). We conclude that Watson's demise was caused solely by his own actions and was not contributed to by any defect in the Kinsey Sampler. We think, therefore, the trial court properly awarded summary judgment to the defendants.[2]
In light of our holding it is unnecessary to address the other points raised on appeal.
Affirmed.
McNULTY, Acting C.J., and OTT, J., concur.
NOTES
[1] (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
In adopting the doctrine of strict liability in tort, the Supreme Court discussed the fact that the Restatement expressed no opinion on whether the doctrine should apply where harm befalls persons other than users or consumers. The court concluded, however, that the public policy which protects the user and the consumer of a manufactured article should also protect the innocent bystander. The doctrine was thus made applicable to the user consumer or bystander.
[2] Though we could have reached a similar conclusion by utilizing the patent danger rationale of Farmhand, we hesitate to do so in a situation such as this since some evidence that the machine was defective was presented to the trial court. Moreover, in the recent case of Blackburn v. Dorta, 348 So.2d 287, opinion filed May 5, 1977, the Supreme Court held that assumption of the risk has merged into comparative negligence and is no longer an absolute defense. Under Dorta it is arguable that the patent danger doctrine might be included in one of the many variations of assumption of the risk enumerated in Justice Sundberg's opinion.