353 So.2d 917 (1977)
Clyde Pete JONES and Irma Jean Jones, His Wife, Appellants,
v.
AUBURN MACHINE WORKS CO., INC., a Foreign Corporation Doing Business in the State of Florida, Appellee.
No. 77-168.
District Court of Appeal of Florida, Second District.
December 28, 1977.
Rehearing Denied January 31, 1978.
*918 Robert Orseck of Podhurst, Orseck & Parks, P.A., Miami, for appellants.
Donald L. Gattis, Jr. and Jacqueline R. Griffin of Wells, Gattis & Hallowes, P.A., Orlando, for appellee.
RYDER, Judge.
Appellants, plaintiffs below, appeal a final summary judgment in favor of defendant/appellee, the manufacturer of a trenchdigging apparatus, in an action for personal injury and loss of consortium.
Appellant Clyde Pete Jones sustained serious injuries requiring the eventual amputation of his left leg below the knee when his foot became entangled in the trenching device manufactured by appellee Auburn Machine Works Co., Inc. [hereinafter referred to as "Auburn"]. At the time of the accident, Jones was sixteen years of age and possessed a tenth grade education. He was employed by the C.C. Connell Construction Company [hereinafter referred to as "Connell"] for approximately four and one-half months. He worked as part of a crew laying underground telephone cable wherein trenching machines were used by Connell to make an excavation into which the cable was subsequently placed. Jones' specific job was to guide the cable into the trench as it was dug. On the day of the accident, because of the unusual size of the particular cable the company was laying at the time, Jones' supervisor instructed him to climb into the trench behind the trencher in order to place the cable flat at the bottom of the trench and to "mash" the cable into the ground by stepping on it with his feet. The trench was only wide enough for a person to get in sideways, which Jones did. He was working "a couple of feet" behind the trencher and he acknowledged that he was not normally required to work in the trench. Jones was aware there was no guard on the trencher and knew not to allow his legs to be caught in the device.
Immediately before the accident, another employee was handing the cable down to appellant and Jones was patting it into the ground. He was working in very soft sand into which his feet easily sank. During the procedure, the side of the trench folded over and Jones had the trencher stopped while he dug it out. When the trenching operation was resumed Jones attempted to crawl out of the trench. At that point, the side of the trench caved in, Jones lost his balance and as a result thereof his left foot became entangled in the exposed chain of the machine whereupon he sustained the injuries alluded to above which required eventual amputation of the left leg below the knee.
The trenching device, as manufactured and designed by appellee, contained no shield or guard. Jones' employer, Connell, on its own had designed a removable cable guide or chute for safety purposes so that the workmen could stand away from the chain and feed the cable through the chute. A local company made the chutes and Connell installed them. However, because of the large size of the cable being laid on this particular job, Jones' superior had removed the chute.
The trencher was specifically designed to be hooked up behind the tractor, which pulled it. The driver of the tractor operated the trencher. All the driver's controls were to the front and alongside him. The tractor had no rear-view mirror.
By an amended complaint, appellants sued Auburn as manufacturer[1] setting *919 forth separate claims of negligence, breach of implied warranty and strict liability in tort because of alleged defects in the manufacture and design of the trencher involved in the accident. The amended complaint alleged negligent design and manufacture for failure to provide reasonable safety guards on moving, exposed and dangerous parts of the machine, such as the chain. The amended complaint further alleged negligent design for failure to provide the driver of the tractor which pulled the trencher with an adequate view of the trencher's dangerous moving parts, such as the chain; and alleged negligent failure to provide sufficient instructions for the use of the trencher. Proximate cause was duly pleaded on all counts.
Appellants also filed for the record an affidavit of an expert engineer, stating in his opinion, based upon the discovery in the record, the design of the trencher constituted a "departure from reasonably safe and sound engineering practice at the time of its manufacture" because of the absence of the rear-view mirror on the tractor and because "the trenching boom was not guarded or shielded leaving an exposed chain." The affidavit further stated that, at the time the unit was manufactured, a guard was available to Auburn.
After hearing, a final summary judgment was entered in favor of Auburn. In its order the court below did not set forth the basis upon which it granted the motion for summary judgment, save its opinion there were no material issues of fact. From this order this appeal ensues.
Appellee asks this court to affirm the decision of the trial court below drawing our attention to Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802 (1950) and to the Florida case of Farmhand, Inc. v. Brandies, 327 So.2d 76 (Fla. 1st DCA 1976). Farmhand adopted the obvious and patent rule espoused by the New York court in Campo, that is, "... the manufacturer is under no duty to render a machine or other article `more' safe  as long as the danger to be avoided is obvious and patent to all." (95 N.E.2d at 804).
Appellants, however, are quick to point out that Campo was overruled by the New York Court of Appeals in Micallef v. Miehle Company, 39 N.Y.2d 376, 384 N.Y.S.2d 115, 348 N.E.2d 571 (1976). Further, appellants urge upon us the opinion in West v. Caterpillar Tractor Company, Inc., 336 So.2d 80 (Fla. 1976), where the Florida Supreme Court adopted the doctrine of strict liability as stated by the ALI Restatement (Second) of Torts Section 402A.
We are also aware of our decision in Watson v. Lucerne Machinery and Equipment, Inc., 347 So.2d 459 (Fla.2d DCA 1977). There this court sustained a summary judgment. We pointed out that there was some language in West that could be construed as reducing the obvious and patent danger doctrine from an absolute defense to a factor to be considered in apportioning the damages, and despite the adoption of the strict liability doctrine in tort, the court must still look for the existence of proximate causation between the alleged defect and the death of appellant Watson. The record showed Watson's demise was caused solely by his own actions and was not contributed to by any defect in the machinery in that case.
Such is not obvious in the case sub judice. There are material issues of fact herein including the question of proximate cause of Jones' injuries which should have been allowed to have been submitted to a jury. Of course, the jury will necessarily consider the question of patency of the danger to this sixteen year old boy in making its determination of proximate cause.
It thus cannot be said that appellee, as movant, met its "... burden of showing conclusively that genuine issues of material fact do not exist." Holl v. Talcott, 191 So.2d 40, 47 (Fla. 1966); Tamiami Builders, Inc. v. Smith, 305 So.2d 58 (Fla.2d DCA 1974).
The order granting summary judgment is therefore reversed and the cause is remanded *920 for further proceedings not inconsistent herewith.
BOARDMAN, C.J., and SCHEB, J., concur.
NOTES
[1] The amended complaint also named Connell, Jones' employer, as a defendant. A summary judgment in favor of Connell was ultimately entered on the ground that Connell, as the employer, was immune from suit here pursuant to Chapter 440, Fla. Stat. (1975), "Workmen's Compensation Law."