366 So.2d 1167 (1979)
AUBURN MACHINE WORKS CO., INC., etc., Petitioner,
v.
Clyde Pete JONES and Irma Jean Jones, His Wife, Respondents.
No. 53526.
Supreme Court of Florida.
January 18, 1979.
Jacqueline R. Griffin, of Wells, Gattis & Hallowes, Orlando, for petitioner.
Robert Orseck, Walter H. Beckham, Jr., Robert L. Parks and Joel D. Eaton, of Podhurst, Orseck & Parks, Miami, for respondents.
ALDERMAN, Justice.
We have for review the decision in Jones v. Auburn Machine Works Co., 353 So.2d 917 (Fla. 2d DCA 1977), in which the Second District refused to apply the "patent danger" or "open and obvious hazard" doctrine so as to preclude liability on the part of a manufacturer. This decision conflicts with Farmhand, Inc. v. Brandies, 327 So.2d 76 (Fla. 1st DCA 1976), in which the First District applied the doctrine and held that it created an exception to a manufacturer's liability. To resolve this conflict, we must either accept or reject the patent danger doctrine. We reject the doctrine and hold that the obviousness of the hazard is not an exception to liability on the part of the manufacturer but rather is a defense by which the manufacturer may show that the plaintiff did not exercise a reasonable degree of care as required by the circumstances. We also conclude that the principles of comparative negligence apply where this defense is raised.
The facts can be stated briefly. Clyde Jones, sixteen years of age, worked with a crew laying underground telephone cable. He had been instructed by his supervisor on the day of the accident to climb into the trench behind the trench digging machine in order to place the cable flat at the bottom of the trench. While guiding the cable into the trench directly behind the trencher, he lost his balance when the side of the trench caved in, and his foot became entangled in the exposed chain of the machine. He sustained injuries which required the amputation of his left leg below the knee. The trencher possessed no shield or guard and was obviously dangerous.
Jones and his wife sued C.C. Construction, his employer, and Auburn Machine Works Company, the manufacturer of the trench digging device. The employer was granted summary judgment based on its workmen's compensation immunity. In *1168 their amended complaint against Auburn, the Joneses alleged negligence, breach of warranty, and strict liability arising out of the alleged defective manufacture and design of the trencher. They alleged that Auburn failed to provide reasonable safety features, shields, and guards on moving, exposed, and dangerous portions of the machine; that Auburn failed to design and manufacture the trencher so that the driver or operator could adequately view the operation of the machine's dangerous moving parts; and that Auburn failed to furnish adequate operation instructions. The amended complaint further alleged that Auburn impliedly warranted to ultimate users of the trencher that it was fit for its intended purpose and was safely designed; that the trencher, however, was not of merchantable quality because of its lack of safety devices; and that Auburn was strictly liable in tort. Proximate cause was alleged on all counts.
Auburn filed a motion for summary judgment. In opposition to this motion, the Joneses filed an affidavit of an expert witness testifying that the trencher's design constituted a departure from the reasonably safe and sound engineering practice at the time of its manufacture. The witness stated that the placement of the trencher upon the tractor by Auburn constituted a departure from reasonably safe and sound engineering practice at the time of its manufacture in that Auburn failed to equip the tractor with a rearview mirror which would allow the operator to see the trencher in operation; that Auburn failed to have a library containing safety and design standards at the time this machine was manufactured; that the machine was manufactured without any thought to prevailing safety requirements for the trencher; that the trenching boom was not guarded or shielded, leaving an exposed chain; that a guard or shield probably would have prevented the accident; and that such guard or shield was available at the time this trencher was manufactured or prior to the time of the accident. The trial court entered summary judgment for Auburn, and the Joneses appealed.
Holding that Auburn as movant failed to meet its burden of showing conclusively that no genuine issues of material fact existed, the Second District reversed the trial court's order granting summary judgment; and, referring to its earlier decision in Watson v. Lucerne Machinery & Equipment, Inc., 347 So.2d 459 (Fla. 2d DCA 1977), it refused to adopt the obvious and patent danger rule espoused by the First District in Farmhand, Inc. v. Brandies, supra.
Auburn, relying primarily upon Farmhand and Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802 (1950), argues that we should apply the patent danger doctrine and contends that this doctrine is based upon sound principles. In response, the Joneses argue that we should reject this doctrine and hold that the obviousness of the hazard is merely an element to be considered in the determination of contributory fault.
The most cogent statement of the patent danger doctrine is found in Campo v. Scofield, supra. In that case, the New York Court of Appeals stated:
[T]he manufacturer of a machine or any other article, dangerous because of the way in which it functions, and patently so, owes to those who use it a duty merely to make it free from latent defects and concealed dangers... .
If a manufacturer does everything necessary to make the machine function properly for the purpose for which it is designed, if the machine is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demands.
301 N.Y. at 471-2, 95 N.E.2d at 803-04.
The First District in Farmhand applied the patent danger doctrine as enunciated in Campo v. Scofield to the facts of the case before it because it believed the doctrine to be the controlling law in Florida at the time it rendered its decision, holding that the doctrine barred the plaintiff's negligence and breach of warranty claims. The First District recognized, however, that its decision in Farmhand passed upon a question of *1169 great public interest. Because of this concern, the First District in Farmhand certified for our consideration the question of whether the manufacturer of a machine in a defective condition unreasonably dangerous to the user should be held liable to the user notwithstanding that the condition was obviously dangerous. No petition for writ of certiorari was filed, however, and the certified question was therefore never answered by this Court.
Farmhand was decided shortly before the New York Court of Appeals, in Micallef v. Miehle Co., 39 N.Y.2d 376, 384 N.Y.S.2d 115, 348 N.E.2d 571 (1976), overruled Campo v. Scofield, supra. The New York court, concluding that the patent danger doctrine produced harsh results and suffered from rigidity, held that rather than preventing a plaintiff from establishing his case, the obviousness of the danger should be available to the defendant on the issue of whether plaintiff exercised that degree of reasonable care required under the circumstances. The New York court said:
Apace with advanced technology, a relaxation of the Campo stringency is advisable. A casting of increased responsibility upon the manufacturer, who stands in a superior position to recognize and cure defects, for improper conduct in the placement of finished products into the channels of commerce furthers the public interest. To this end, we hold that a manufacturer is obligated to exercise that degree of care in his plan or design so as to avoid any unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is used in the manner for which the product was intended....
What constitutes "reasonable care" will, of course, vary with the surrounding circumstances and will involve "a balancing of the likelihood of harm, and the gravity of harm if it happens, against the burden of the precaution which would be effective to avoid the harm" (2 Harper & James, Torts, § 28.4; see Pike v. Hough Co., 2 Cal.3d 465, 85 Cal. Rptr. 629, 467 P.2d 229, supra). Under this approach, "the plaintiff endeavors to show the jury such facts as that competitors used the safety device which was missing here, or that a `cotter pin costing a penny' could have prevented the accident. The defendant points to such matters as cost, function, and competition as narrowing the design choices. He stresses `trade-offs'. If the product would be unworkable when the alleged missing feature was added, or would be so expensive as to be priced out of the market, that would be relevant defensive matter"... .
.....
We next examine the duty owing from a plaintiff or, in other words, the conduct on a plaintiff's part which will bar recovery from a manufacturer. As now enunciated, the patent-danger doctrine should not, in and of itself, prevent a plaintiff from establishing his case. That does not mean, however, that the obviousness of the danger as a factor in the ultimate injury is thereby eliminated, for it must be remembered that in actions for negligent design, the ordinary rules of negligence apply... . Rather, the openness and obviousness of the danger should be available to the defendant on the issue of whether plaintiff exercised that degree of reasonable care as was required under the circumstances.
39 N.Y.2d at 385-7, 384 N.Y.S.2d at 121-22, 348 N.E.2d at 577-8.
The modern trend in the nation is to abandon the strict patent danger doctrine as an exception to liability and to find that the obviousness of the defect is only a factor to be considered as a mitigating defense in determining whether a defect is unreasonably dangerous and whether plaintiff used that degree of reasonable care required by the circumstances.
For example, in Dorsey v. Yoder Co., 331 F. Supp. 753 (E.D.Pa. 1971), aff'd, 474 F.2d 1339 (3d Cir.1973), a products liability suit brought by a plaintiff whose right arm and hand were almost severed by the blades of a metal slicer machine, the court held that even though the danger of the unguarded rotary blades was obvious to plaintiff, recovery *1170 was not precluded for that reason alone. The court explained:
It does not follow from this holding that the manufacturer of every obviously defective or dangerous product owes an automatic duty to an injured party. Although a knife qualifies as an obviously dangerous instrumentality, a manufacturer need not guard against the danger that it presents. "[Nor is it] necessary to tell a zookeeper to keep his head out of the hippopotamus' mouth." Bartkewich v. Billinger, supra [432 Pa. 351] at 356, 247 A.2d 603 at 606. See also, 2 Harper and James, The Law of Torts, § 28.6 (1956 ed). The point is that to preclude absurd results the obviousness of the danger must constitute but one of the factors that determines whether the danger is unreasonable.
The proper test of "unreasonable danger" is whether a reasonable manufacturer would continue to market his product in the same condition as he sold it to the plaintiff with knowledge of the potential dangerous consequences the trial just revealed. See P. Keeton, Manufacturer's Liability: The Meaning of "Defect" in the Manufacture and Design of Products, supra note 2 at 568. See also Pike v. F.G. Hough Co., supra.
To answer this question one must:
"[balance the] likelihood of harm to be expected from a machine with a given design and the gravity of harm if it happens against the burden of precaution which would be effective to avoid harm." 2 Harper and James, The Law of Torts § 28.4 (1956 ed), cited with approval in Pike v. F.G. Hough Co., supra.
And in measuring the likelihood of harm one may consider the obviousness of the defect since it is reasonable to assume that the user of an obviously defective product will exercise special care in its operation, and consequently the likelihood of harm diminishes.
In a persuasive article, Dean Wade has enumerated the specific factors that enter into the final balance as follows:
"(1) the usefulness and desirability of the product, (2) the availability of other and safer products to meet the same need, (3) the likelihood of injury and its probable seriousness, (4) the obviousness of the danger, (5) common knowledge and normal public expectation of the danger (particularly for established products), (6) the avoidability of injury by care in use of the product (including the effect of instructions or warnings), and (7) the ability to eliminate the danger without seriously impairing the usefulness of the product or making it unduly expensive."
Taking the Harper and James formulation as expanded by Dean Wade, it becomes understandable why the plaintiff accidentally injured by a knife does not recover from the manufacturer. The product is not unreasonably dangerous and no duty arises because (1) everyone realizes the dangers; (2) by definition a guard over the blade (the part that causes danger) would eliminate its utility; (3) the cost of a "safe" knife might be prohibitive. Balancing the likelihood and gravity of harm against the burden of protection, a manufacturer should not be liable for a slip of the knife.
But consider the Yoder machine. Certainly Dorsey knew the danger of unguarded cutters. On the other hand, a guard would not eliminate the machine's usefulness, nor would the cost of $200 to $500 on an $8,000 machine be unreasonable... .
331 F. Supp. at 759-60.
The patent danger doctrine encourages manufacturers to be outrageous in their design, to eliminate safety devices, and to make hazards obvious. For example, if the cage which is placed on an electric fan as a safety device were left off and someone put his hand in the fan, under this doctrine there would be no duty on the manufacturer as a matter of law. So long as the hazards are obvious, a product could be manufactured without any consideration of *1171 safeguards. This example of the fan differs from the example of the knife in Dorsey v. Yoder Co., supra, wherein the court explained that the utility of the knife would be eliminated by placing a guard over the blade. As the New York court in Micallef pointed out in discussing reasonable care, the defendant may show as relevant defensive matter the cost, function, and competition as narrowing design choices, the unworkability of the product when the alleged missing feature is added, or that the product would be so expensive as to price it out of the market.
The patent danger doctrine protects manufacturers who sell negligently designed machines which pose formidable dangers to their users. It puts the entire accidental loss on the injured plaintiff, notwithstanding the fact that the manufacturer was partly at fault. This is inconsistent with the general philosophy espoused by this Court in Hoffman v. Jones, 280 So.2d 431 (Fla. 1973); West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976); and Blackburn v. Dorta, 348 So.2d 287 (Fla. 1977).
In adopting the doctrine of comparative negligence, in Hoffman v. Jones, supra, we said:
Whatever may have been the historical justification for it, today it is almost universally regarded as unjust and inequitable to vest an entire accidental loss on one of the parties whose negligent conduct combined with the negligence of the other party to produce the loss. If fault is to remain the test of liability, then the doctrine of comparative negligence which involves apportionment of the loss among those whose fault contributed to the occurrence is more consistent with liability based on a fault premise.
280 So.2d at 436.
Subsequently, we decided West v. Caterpillar Tractor Co., supra, in which we adopted strict liability in tort, as expressed in section 402A, Restatement (Second) of Torts (1965). The issue in West was whether a road grader's design defects, the absence of rearview mirrors and an audible warning system for use in backing the grader, were actionable. We stated that the user of the product seeking to hold the manufacturer strictly liable in tort must establish the manufacturer's relationship to the product in question, the defect and unreasonably dangerous condition of the product, and the existence of proximate causal connection between such condition and the user's injuries. Having established the applicability of the strict liability doctrine, we went on to explain what conduct by the injured party would create a defense of contributory negligence, and in this discussion, we viewed the obviousness of the hazard as part of the defense of contributory negligence rather than as an exception to liability. We relied on the definition of contributory negligence in comment n to section 402A, Restatement (Second) of Torts,[1] and held:
We recognize that contributory negligence of the user or consumer or bystander in the sense of a failure to discover a defect, or to guard against the possibility of its existence, is not a defense. Contributory negligence of the consumer or user by unreasonable use of a product after discovery of the defect and the danger is a valid defense... . The defendant manufacturer may assert that the plaintiff was negligent in some specified manner other than failing to discover *1172 or guard against a defect, such as assuming the risk, or misusing the product, and that such negligence was a substantial proximate cause of the plaintiff's injuries or damages... . The fact that plaintiff acts or fails to act as a reasonable prudent person, and such conduct proximately contributes to his injury, constitutes a valid defense. In other words, lack of ordinary due care could constitute a defense to strict tort liability.
336 So.2d at 90.
In West we concluded that contributory negligence is available in determining the apportionment of the negligence of the manufacturer of the alleged defective product and the negligence of the consumer, and we emphasized that the ordinary rules of causation and the defenses applicable to negligence are available. We additionally held that contributory negligence may properly be asserted in an action for breach of implied warranty and specifically said in this regard:
If the injured person's conduct is a proximate cause of the injuries, the defendant would have the right to a charge on comparative negligence in an action for breach of implied warranty. If the injured person failed to use that degree of care which a reasonably careful person would use under like circumstances then he is guilty of some negligence. If this negligence was a proximate contributing cause of the injuries, the defendant would be entitled to raise the defense of contributory or comparative negligence. In other words, lack of ordinary due care could constitute such a defense.
336 So.2d at 92.
Further support of our holding in the present case is found in our recent decision of Blackburn v. Dorta, supra, which held that the affirmative defense of implied assumption of the risk is merged into the defense of contributory negligence and that the principles of comparative negligence apply in all cases where such defense is raised. In Blackburn, we declared that there is no reason supported by justice or law to give credence to the defense of assumption of the risk which bars a plaintiff from recovery merely because he voluntarily exposed himself to a known risk notwithstanding the fact that his conduct may be reasonable, and we held that assumption of the risk as a complete bar to recovery is inconsistent with the holding of this Court that liability should be equated with fault.
Accordingly, we reject the patent danger doctrine and conclude that it does not create an absolute exception to liability on the part of the manufacturer,[2] and we hold that the district court correctly refused to apply this doctrine as an absolute bar to recovery. We approve the decision of the Second District reversing the summary judgment and holding that material issues of fact are presented, including the proximate cause of Jones' injuries.[3]
ENGLAND, C.J., and OVERTON, SUNDBERG and HATCHETT, JJ., concur.
NOTES
[1] Section 402A, Restatement (Second) of Torts, comment n provides:

Contributory negligence. Since the liability with which this Section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases (see § 524) applies. Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.
[2] The recent decision of the District Court of Appeal, Fourth District, in Blaw-Knox Food & Chem. Equip. Corp. v. Holmes, 348 So.2d 604 (Fla. 4th DCA 1977), is consistent with our holding in the present case. In Blaw-Knox the Fourth District held that the patent danger doctrine amounts to an assumption of the risk defense that is merged into the defense of contributory negligence subject to the principle of comparative negligence.
[3] Cf. Watson v. Lucerne Mach. & Equip., Inc., supra, wherein the District Court of Appeal, Second District, held:

It appears to us that Watson's death was not a result of any defect in the Kinsey Sampler, but was solely caused instead by his own disregard of his supervisors' warnings to stay away from a machine which presented obvious dangers during operation. His job did not require him to be in the area where he was killed; in fact, he had to kneel down and crawl under a conveyer belt to get to where he was killed. As the Supreme Court said in West, `Strict liability does not make the manufacturer or seller an insurer.' 336 So.2d at 90. See also Isaacs v. Powell, 267 So.2d 864, 866 (Fla. 2d DCA 1972). We conclude that Watson's demise was caused solely by his own actions and was not contributed to by any defect in the Kinsey Sampler. We think, therefore, the trial court properly awarded summary judgment to the defendants. [Footnote omitted.]
347 So.2d at 461.