John H. KROON, Plaintiff–Appellant,

v.

BEECH AIRCRAFT CORPORATION, etc., Defendant–Appellee.

No. 79–1494.

United States Court of Appeals, Fifth Circuit.

Oct. 23, 1980.

Rehearing Denied Nov. 17, 1980.

Larry Klein, Palm Beach, Fla., for plaintiff-appellant.

John M. Murray, George W. Chesrow, Miami, Fla., for Beech Aircraft Corp.

Before TUTTLE, RANDALL and TATE, Circuit Judges.

RANDALL, Circuit Judge:

Appellant, John Kroon, commenced this diversity tort action in a federal district court in Florida, seeking some compensation from Appellee, Beech Aircraft Corporation (Beech), for damages to Kroon's airplane and his business as a consequence of a wreck following an aborted takeoff attempt from the Arthur Dunn Airpark in Titusville, Florida. The district court granted Beech's motion for summary judgment on the ground that Kroon's negligence was the sole proximate cause of the accident. We affirm.

Because this is a diversity action, the substantive tort law of Florida governs the controversy; but because the forum is a federal court, federal standards govern whether entry of summary judgment was appropriate. *Nunez v. Superior Oil Co.*, 572 F.2d 1119 (5th Cir.1978); *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir.1969). Under Fed.R.Civ.P. 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact and [if] the moving party is entitled to a judgment as a matter of law."

The facts are not in dispute. On July 7, 1975, Kroon intended to take off from Arthur Dunn Airpark in a 1967 Beech 95–C55 aircraft. Kroon was an experienced pilot, with at least 9000 hours of flying time, 300 of which were logged in a Beech 95–C55. Kroon was very familiar with the airplane. The 95–C55 was equipped with manually-operated gust lock system. A gust lock is designed to prevent damage to an airplane's control system by keeping the movable surfaces of the airplane–the rudder, the elevators, and the ailerons–from moving in windy conditions. The rudder gust lock is not in issue in this case. The aileron and elevator gust lock is essentially a bent metal pin that is inserted through aligned holes in the steering control column of the aircraft. When properly in place, the pin prevents the aileron and elevator controls from moving. Attached to one end of the pin is a metal cable, to which is attached an oval-shaped piece of plastic to be placed over the throttle controls as a visual reminder to the pilot that the gust lock is engaged. It is not possible to get the aircraft off the ground with the gust lock engaged, although the plane can be maneuvered while on the ground.

On the morning of the accident, one of Kroon's part–time employees, who was going to fly with Kroon, performed the pre-flight check of the airplane required by law. When the employee was finished, however, Kroon was still waiting for another person who was going to fly with them. The employee therefore left the plane outside the terminal building with the gust lock still in place, since conditions were windy.

When Kroon and his passengers were ready to leave, they were over an hour behind schedule. Kroon was to pilot the aircraft, but did not check to see that all the controls were operating freely. He attempted to take off, but realized part way down the runway that the ailerons would not operate. Since this made takeoff impossible, and there was too little room left on the runway to stop safely, Kroon steered the plane off the runway, through a fence, and into a sand pile. No one was injured, although the airplane was badly damaged.

Kroon admits that his own negligence contributed to the accident. He argues, however, that Beech must share some of the legal responsibility under Florida's comparative negligence principle, on the theory that the design of the gust lock system also contributed to the accident. Specifically, Kroon suggests that the failure to design the gust lock system in a fashion that rendered the plane entirely inoperable when the controls were locked was negligence, a breach of implied and express warranties of fitness and merchantability, or a design defect making Beech answerable in strict liability. The Florida Supreme Court has indicated that to recover on any of these theories, a plaintiff must show that the defendant's conduct was a proximate cause of the plaintiff's injury. *West v. Caterpillar Tractor Co.*, 336 So.2d 80 (Fla.1976). Based on the undisputed facts, we agree with the district court in this case that, as a matter of law, Kroon's conduct was the sole proximate cause of the accident.

Kroon argues that the question of proximate cause should have been left to the jury. Although in Florida the determination of proximate cause is normally left to the jury, a summary judgment on the ground that plaintiff's conduct was the sole proximate cause of an injury is appropriate when reasonable jurors could only so conclude. *Helman v. Seaboard Coast Line R. Co.*, 349 So.2d 1187, 1189, 1190 (Fla.1977). The Florida Supreme Court cited *Kwoka v. Campbell*, 296 So.2d 629, 631 (Fla.3d Dist. Ct.App.1974), in support of that proposition, where the court held that "[t]he question of proximate cause is one for the court where there is an active and efficient intervening cause." The *Kwoka* court noted that a rule reserving to the jury all such determinations would mean that "every allegation of a breach of duty no matter how remote from an injury would result in a jury trial." *Id.*

Kroon relies primarily on Beech's admitted awareness that misuse of the gust lock had resulted in four previous accidents to support his contention that the jury should have been permitted to determine whether the design of the gust lock, or Beech's failure to warn users of its danger, was a legal wrong that proximately caused the accident. Without determining whether the failure to warn was negligent or whether the design of the gust lock was negligent, a breach of any warranty, or a defect, it is evident that nothing in the design of the gust lock nor Beech's failure to warn users of a potential danger proximately caused *this* accident.

Kroon admitted in his deposition that he was aware that the aircraft could not be flown while the gust lock was engaged, but that he knew that ground operations, such as taxiing, could be performed with the lock in place. Kroon was very familiar with the 95–C55. He said in his deposition that he used the gust lock system every day, and that his standard preflight procedures included removing the gust lock and checking the controls for movement. On this occasion he did not perform his standard preflight procedure, and he admitted that he did not check the controls for full movement at any time before actually attempting to take off. Immediately in front of him from the moment he entered the aircraft was a checklist of operations to be performed prior to takeoff. One of these operations was to check to ensure that the controls moved freely. Kroon admitted that he had not performed this operation properly. These facts amply support the district court's conclusion that Kroon's negligence was the sole proximate cause of the accident.

To be sure, the gust lock system could have been designed differently, and had it been designed so that the aircraft could not be moved with the lock engaged, this accident could not have happened. In this sense, the design of the lock system was a cause of the accident. On the facts of this case, however, the design was not a proximate cause of the accident. The district court aptly analogized the circumstances of this accident to a situation in which a pilot takes off with only a gallon of fuel in his tanks. Such accidents can and do happen; and no doubt an airplane could be designed to make such an accident impossible. It would, however, strain reason to suggest

that the failure to make the aircraft fool-proof in that detail proximately causes the resulting disaster if an experienced pilot familiar with the particular aircraft were to take off without checking to see if he had sufficient fuel. In *Matthews v. Williford*, 318 So.2d 480, 481 (Fla.2d Dist.Ct.App.1975), the Florida Second District Court of Appeals said:

> The law is well–settled in this state that a remote condition or conduct which furnishes only the occasion for someone else's supervening negligence is not a proximate cause of the result of the subsequent negligence.

On this occasion, Kroon was careless, and his carelessness was the only legal cause of the accident. *If* there was any fault in the design of the gust lock system, it was clearly no more than a remote condition that furnished Kroon with the opportunity to be careless. *See, e. g., Alves v. Adler Built Indus. Inc.*, 366 So.2d 802 (Fla.3d Dist.Ct. App.1979) (without deciding question of defendants' negligence, court affirmed summary judgment in favor of defendants based on holding that decedent's conduct, not defendants', was proximate cause of injury); *Watson v. Lucerne Machinery & Equip., Inc.*, 347 So.2d 459, 461 & n.2 (Fla.2d Dist.Ct.App.1977), *cited with approval* in *Auburn Mach. Works Co. v. Jones*, 366 So.2d 1167, 1172 n.3 (Fla.1979) (without deciding whether defendant's machine was defective, court affirmed summary judgment in favor of defendant on ground that plaintiff's conduct was sole cause of plaintiff's injury). Under Florida law, Beech was entitled to summary judgment.

AFFIRMED.

TATE, Circuit Judge, dissenting:

I respectfully dissent.

Summary judgment was inappropriate under the showing made. The defendant Beech was aware that pilots sometimes for-got to disengage gust locks before taking off from the ground; that at least three fatal accidents had occurred because of such failures; that Beech had in fact designed a failsafe gust lock system to avoid such accidents that was available, but not installed, on this plane; that the National Transportation Safety Board has recognized this risk, because of its investigation of fatal accidents; and that the NTSB has indicated that corrective action is required with regard to gust locks of the type here involved.

As I construe the majority opinion, it does not concede, even for purposes of summary judgment, that a trial jury could have found upon such evidence that Beech's negligence, if any, contributed to the accident. In my opinion, the majority errs in this regard and in deciding this jury issue as to negligence and causation.

Further, I am unable to agree with the majority's conclusion that, in any event, the summary judgment dismissing the plaintiff pilot's claim was appropriate on the theory that, because he forgot to disengage the gust lock (and was aware of the hazard thus created), his negligence was the sole proximate cause of the accident.

Under the Florida comparative negligence system, the negligence of the pilot is not necessarily the sole proximate cause of the accident.[1] Under Florida law, a manufacturer may be liable for an injury resulting from its failure to guard against foreseeable carelessness, even though the victim's own carelessness (fault) in encountering the undue risk thereby created is a contributory cause of the accident (thereby reducing the damages awarded, but *not* defeating recovery). *Auburn Machine Works Co., Inc. v. Jones*, 366 So.2d 1167 (Fla.1979). As that decision notes, reversing summary judgment and holding it to be for the jury to determine the effect of the victim's fault in similar circumstances:

---

1. Even under ordinary contributory negligence law, where the defendant's negligence is founded on its failure to protect against the foreseeable carelessness of a victim, its liability is not necessarily defeated when a victim suffers injury through the heedlessness that the defendant's actionable duty was designed to prevent. Restatement of Torts, 2d, Sections 302(a), 302A, 480, 482(1) (1965).

We . . . hold that the obviousness of the hazard is not an exception to liability on the part of the manufacturer but rather is a defense by which the manufacturer may show that the plaintiff did not exercise a reasonable degree of care as required by the circumstances. We also conclude that the principles of comparative negligence apply where this defense is raised. [364 So.2d at 1167]

The patent danger doctrine protects manufacturers who sell negligently designed machines which pose formidable dangers to their users. It puts the entire accidental loss on the injured plaintiff, notwithstanding the fact that the manufacturer was partly at fault. This is inconsistent with the general philosophy espoused by this Court [citations omitted]. [366 So.2d at 1171]

In *West* we concluded that contributory negligence is available in determining the apportionment of the negligence of the manufacturer of the alleged defective product and the negligence of the consumer, and we emphasized that the ordinary rules of causation and the defenses applicable to negligence are available. [366 So.2d at 1172]

Accordingly, we reject the patent danger doctrine and conclude that it does not create an absolute exception to liability on the part of the manufacturer, and we hold that the district court correctly refused to apply this doctrine as an absolute bar to recovery. We approve the decision of the Second District reversing the summary judgment and holding that material issues of fact are presented, including the proximate cause of [the plaintiff] Jones' injuries. [366 So.2d at 1172]