368 So.2d 1247 (1979)
INSURANCE COMPANY OF NORTH AMERICA
v.
ATLAS CONSTRUCTION COMPANY, INC., T. L. James & Company, Inc. and Highlands Insurance Company.
No. 10046.
Court of Appeal of Louisiana, Fourth Circuit.
March 7, 1979.
*1248 Dillon & Cambre, Gerard M. Dillon and Carmelite M. Bertaut, New Orleans, for defendants-appellants.
Joe M. Inabnett, New Orleans, for plaintiff-appellee.
Before GULOTTA, SCHOTT and BEER, JJ.
SCHOTT, Judge.
Plaintiff is the workmen's compensation insurer of U.S. Industries, Inc., Con-plex Division, and brought this action as subrogee of certain employees who were hurt in an accident on January 27, 1976. Defendants are Atlas Construction Company, Inc. and T. L. James & Company, Inc. (hereinafter collectively referred to as "James") and their insurer Highlands Insurance Company.
In February, 1973, employees of James assembled and installed on a truck various components to produce a piece of equipment by which the truck could be located on and move along a bridge or overpass and a scaffolding could be suspended beneath the bridge to enable workmen to reach the pillars and other parts of the structure beneath the bridge. Among the components were a double boom mounted above the truck, running parallel to the surface where the truck was located and extending on both sides beyond the perimeters of the bridge or overpass, a drum, cable, various gears to transfer the truck's power to turn the shaft holding the winch, brake, clutch and levers. The contraption was used successfully and without difficulty until some time at the end of 1975 when the large bronze or "bull" gear mounted on the shaft became worn to the extent that the worn gear attached to the power source could no longer remain engaged with the teeth of the bull. As a result the contraption was overhauled by replacement of the bull gear, both bearings and the brake.
About three months after this overhaul an arrangement was made between employees of Con-plex and James, whereby Con-plex borrowed the machine for use in removing forms beneath a bridge which it had constructed. The contraption was used from four to six weeks without any difficulty when on the date of the accident while a crew was working on the scaffolding under the bridge and truck the drum holding the cable suddenly began to unwind freely and the scaffolding dropped to the ground causing injury to Con-plex employees who were working there.
In deciding the case in favor of plaintiff the trial judge found that James was the manufacturer of the equipment and applied the principle of strict liability on the part of the manufacturer in holding defendants liable. Defendants have appealed, contending that plaintiff failed to prove that there was a defect in the equipment when it left James' hands as manufacturer and that failure of the equipment was the result of normal wear and tear as opposed to a defect. Defendants also contend that they are not liable because James was a gratuitous lender. We will consider these contentions in reverse order.
For our purposes here we will assume that the loan of the equipment was gratuitous. Defendants rely on Mudd v. Travelers Indemnity Company, 309 So.2d 297 (La.1975), which applied LSA-C.C. Art. 2909 and held that the liability of the gratuitous lender is limited to injuries which result from known defects. However, that principle has no application to a lender of an object which he manufactured because the manufacturer is presumed to know of defects in his products. Spillers v. Montgomery Ward & Company, Inc., 294 So.2d 803 (La.1974). Furthermore, plaintiff's position is one of subrogee, i. e., it stands in the shoes of the injured workmen. They are not in the position of recipients of a gratuitous loan but are strictly third-parties in relation to James as the manufacturer of *1249 a defect containing object. Thus, the gratuitous nature of the transaction between their employer and James has no effect on the liability of James to the compensation insurer of these employees.
Defendants' other contentions are more difficult to resolve. They rely on the principle expressed in Madden v. Louisiana Power & Light Co., 334 So.2d 249 (La.App. 4th Cir. 1976) that plaintiff must prove that this equipment "was defective when it left the hands of the manufacturer," and they maintain that the particular defect which caused the equipment to fail was more likely the result of inadequate maintenance or normal wear and tear.
At the outset of this discussion, it seems that the scaffolding fell because of a space between the gear housing and the drum holding the cable which permitted the drum to slip over to the gear housing causing the other side of the drum to become disengaged from a clutch which was supposed to prevent the drum from unwinding the cable. After the accident the problem was remedied by the installation of a washer on the shaft to fill this space. The record is not clear as to exactly how the machinery was constructed but it seems that teeth were to slip into the drum to prevent it from slipping in much the same way as a ratchet would prevent the drum from unwinding. Since the thing was built in 1973 and performed without problems for almost three years it seems unlikely that the problem existed from the beginning. In any event, the burden of proof on the point was on plaintiff and it produced no such evidence. We apply the principle discussed in Foster v. Marshall, 341 So.2d 1354 (La.App. 2nd Cir. 1977) Writ refused, that a manufacturer cannot be expected to design products whose parts do not wear out.
The next question is, what effect was had on liability by the overhaul of the equipment by James about three months before it was loaned to Con-plex. This overhaul was precipitated by a specific problem with wear on the bull gear. The replacement of that gear was not shown to relate to the failure of the equipment in the subject accident. The mechanic who did the overhaul might have decided to install the washer had he removed the clutch on the side of the drum opposite from the gear but his attention was not directed to this area and his particular concern was with the gear on the other side. Furthermore, there is no showing that this space had developed on the shaft at that time. It could have developed through normal wear and tear over the period of time between the date of overhaul and the date of the accident. It was plaintiff's burden to prove negligence on the part of the mechanic, and it failed to do so.
The overhaul does not provide any other basis for legal liability on James. The equipment was still the same old thing which had been in use since 1973 and which was vulnerable to wear and tear. When it was overhauled James did not contemplate loaning it to anyone and when it was loaned to Con-plex no warranty was extended. Perhaps the problem is best addressed by analogy. Suppose this equipment had been located in an outside yard for several years when one day Con-plex asked to borrow it. Suppose further that after James agreed, Con-plex's employees began to use the equipment and shortly thereafter the machine failed because of rusted bolts and the accident resulted. On what basis would James be liable? It warranted nothing. The risk of the machine's failure was assumed entirely by Con-plex and it alone would be liable to the employees.
The facts of this case do not support a different result. The injured workmen could look to their employer alone under the circumstances for recovery because James breached no duty, whether in tort or contract, to them. Their subrogee, the plaintiff, likewise cannot recover from James.
Accordingly, the judgment appealed from is reversed and set aside and there is judgment in favor of defendants, Atlas Construction Company, Inc., T. L. James & Company, Inc. and Highlands Insurance Company, and against plaintiff, Insurance Company of North America dismissing its suit at its cost.
REVERSED AND RENDERED.