396 So.2d 731 (1981)
Sharon SAVAGE, Appellant,
v.
JACOBSEN MANUFACTURING COMPANY, Appellee.
No. 80-199.
District Court of Appeal of Florida, Second District.
March 13, 1981.
Rehearing Denied April 9, 1981.
*732 Richard A. Bokor, Tampa, for appellant.
Larry I. Gramovot of Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, for appellee.
BOARDMAN, Judge.
Sharon Savage, plaintiff in the trial court, appeals a final summary judgment rendered in favor of defendant Jacobsen Manufacturing Company in her suit for damages sustained when she slipped and fell while dismounting from a mowing tractor manufactured by appellee. The theory of appellant's case is strict liability in tort. We affirm.
The facts are not disputed and, briefly stated, are: On April 26, 1975, appellant, while working for U.S. Homes of Florida, Inc. (U.S. Homes) as an operator of mowing equipment at the Gulf Gate Golf Club in Sarasota, slipped and fell as she was dismounting from a lawn-mowing tractor. The tractor had been manufactured on December 23, 1971. Appellant alleged that she fell from the platform beneath the driver's seat because there was no nonskid surface on the platform.
At the time of the tractor's manufacture the platform had a grey, nonskid, painted surface, and that surface was intact when it was delivered to U.S. Homes. Gene Lanfair, appellant's immediate supervisor at the time of the accident, testified on deposition that there was a "gritty" painted surface on the platform when the tractor was delivered, and the platform was not at all slippery. Lanfair recognized that the painted surface would probably wear off.
Appellant's husband, James Savage, had been employed as a mechanic at Gulf Gate for five to six months prior to the accident and was in charge of mechanical maintenance of the tractor in question. Mr. Savage had driven the tractor on at least two occasions, the last time approximately one week prior to his wife's accident. When driving the tractor, he had noted that the platform was slippery from morning dew and hydraulic fluid which had leaked from a reservoir behind the seat; this was "quite common" on such lawn mowers. Several weeks prior to his wife's accident Savage had asked Lanfair to purchase some nonskid paint to recoat several pieces of equipment, including the tractor involved here, but Lanfair had not done so.
In West v. Caterpillar Tractor Co., Inc., 336 So.2d 80, 86-87 (Fla. 1976), the Florida Supreme Court stated:
[S]trict liability should be imposed only when a product the manufacturer places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being. The user should be protected from unreasonably dangerous products or from a product fraught with unexpected dangers. In order to hold a manufacturer liable on the theory of strict liability in tort, the user must establish the manufacturer's relationship to the product in question, the defect and unreasonably dangerous condition of the product, and the existence of the proximate causal connection between such condition and the user's injuries or damages.
The Restatement (Second) of Torts, § 402A, Comment "i," suggests the following definition of "unreasonably dangerous": "The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."
The issue before us here is whether, under West, there is a genuine issue of material fact, Holl v. Talcott, 191 So.2d 40 (Fla. 1966), as to whether the absence of a nonskid surface on the tractor at the time of appellant's injury constituted a defect. We hold that the trial court properly concluded that there was no showing of a defect. The record before us discloses no evidence that the nonskid painted surface in any way constituted a deviation from the norm, failed to meet the standard of the industry, or constituted a latent, functional defect. In fact, the evidence showed that the purchaser of the tractor was aware at the time of the purchase of the fact that the painted surface would eventually wear off and was *733 aware prior to appellant's accident that the nonskid surface had, in fact, worn off. Thus the platform did not constitute an "unexpected danger" as to such purchaser. In short, there was no showing of a "defect" which would give rise to the application of § 402A. The nonskid surface merely wore off.
Although we have not found any Florida cases dealing specifically with a manufacturer's duty to produce products with component parts or surfaces that do not wear out with normal use, that issue has been decided several times by the courts of Louisiana. In the area of strict products liability Louisiana has adopted the substantial equivalent of § 402A. West, supra, 336 So.2d at 87 n. 1.
In Foster v. Marshall, 341 So.2d 1354 (La. App.), cert. refused, 343 So.2d 1067, cert. denied, 343 So.2d 1077 (La. 1977), a bolting assembly on the left front axle of a trailer separated, causing the trailer to veer into an oncoming lane of travel and collide with the plaintiff's automobile. The evidence showed that the bolting assembly on the trailer failed primarily because a cotter pin had worn out over time. In affirming the portion of the trial court's decision in favor of the manufacturer, the court of appeal held that the wearing out of a cotter pin did not constitute a "defect," stating:
A manufacturer cannot be expected to design products with component parts which will never wear out, regardless of the nature of use or maintenance. A manufacturer is entitled to anticipate that a consumer purchasing its product will use reasonable care in maintaining it. The product in this case was a relatively simple piece of agricultural equipment for use by farmers or harvesters who generally have some degree of experience in the maintenance of agricultural equipment. All persons who dealt with this particular wagon testified they knew that cotter keys will wear out and need to be replaced periodically... .
... .
A product is defective when the risks are greater than a reasonable buyer would expect. Welch v. Outboard Marine Corp., 481 F.2d 252 (5th Cir.1973). A reasonable buyer of a piece of agricultural equipment such as a cotton wagon should expect the product to contain consumable parts which require inspection and maintenance.
Id. at 1361. Accord, Tri-State Insurance Co. v. Fidelity & Casualty Insurance Co., 364 So.2d 657 (La. App.), cert. denied, 365 So.2d 248 (La. 1978); Insurance Company of North America v. Atlas Construction Co., Inc., 368 So.2d 1247 (La. App. 1979).
We are in accord with the reasoning set out in Foster. For us to hold otherwise would be tantamount to saying that a manufacturer is an insurer of his product. Under the undisputed facts of this case we have no difficulty in reaching the conclusion that appellant is not entitled to the relief she seeks.
Accordingly, the trial court's order of final summary judgment is affirmed.
SCHEB, C.J., and DANAHY, J., concur.