411 So.2d 1004 (1982)
BUILDERS SHORING AND SCAFFOLDING EQUIPMENT COMPANY, INC., Appellant/Cross Appellee,
v.
Lewis SCHMIDT, Appellee/Cross Appellant, and
Bil-Jax, Inc., Appellee.
Lewis SCHMIDT, Appellant,
v.
BUILDERS SHORING AND SCAFFOLDING EQUIPMENT COMPANY, INC., et al, Appellees.
Nos. 81-164, 81-253 and 81-207.
District Court of Appeal of Florida, Fifth District.
March 31, 1982.
*1005 Roy B. Dalton, Jr., of Dean, Ringers, Morgan & Lawton, Orlando, for appellant Builders.
James C. Fisher, Altamonte Springs, for appellee/appellant/cross-appellant Schmidt.
H. Joseph McGuire of Parker, Johnson, Owen & McGuire, Orlando, for appellee Bil-Jax, Inc.
ORFINGER, Judge.
Appellee Schmidt was injured when he leaned or climbed on a scaffolding cross brace which detached from its frame, causing him to fall. He sued Bil-Jax, Inc., the manufacturer of the scaffolding, and Builders Shoring and Scaffolding Equipment Company, Inc., (Builders), who leased the scaffolding to his employer. Builders crossclaimed against Bil-Jax for indemnity.
Schmidt's cause of action against both defendants was based on separate counts of negligence and strict liability as to each defendant. At the conclusion of the plaintiff's case, Builders moved for a directed verdict on the issue of negligence, contending that no evidence had been submitted on which that count could be sustained against it. The motion was granted and judgment entered accordingly. The remaining counts went to the jury. The jury returned a special interrogatory verdict in which it found that:
1. There was no negligence on the part of Bil-Jax.
2. The scaffolding equipment was not defective when sold by Bil-Jax.
3. The scaffolding equipment was defective when leased by Builders, and this defect was a legal cause of plaintiff's injury.
Based on the jury verdict and their apportionment of fault between Schmidt and Builders, the court entered a final judgment in favor of Schmidt against Builders, a final judgment in favor of Bil-Jax on Schmidt's claim, and a final judgment in favor of Bil-Jax on Builders' claim for indemnity. Builders appeals the final judgment in favor of Schmidt; Schmidt cross appeals the directed verdict entered on the negligence count; and Builders appeals the final judgment in favor of Bil-Jax on the indemnity crossclaim. We have consolidated all these appeals. We affirm the directed verdict in favor of Builders on the negligence count, affirm the final judgment for Bil-Jax on the claim for indemnity, and reverse the final judgment in favor of Schmidt against Builders for entry of judgment in favor of Builders.
The scaffolding in question was composed of sections which were put together on the job by the employees using it. The sections were fastened together by a gravity drop level pin known as a "T-lock." Builders had purchased the scaffolding from Bil-Jax at different times. The last delivery of T-lock scaffolding from Bil-Jax to Builders was in January, 1974, thus the scaffolding in question had been in use for a minimum of five years prior to plaintiff's fall in March, 1979. The scaffolding had been in use at plaintiff's job for three weeks. At the time of delivery to the job site and initial assembly, the scaffold locks worked properly; plaintiff himself checked the scaffold. The scaffold was taken apart and reassembled several times by employees during the three weeks prior to the accident.
The jury verdict completely exonerated Bil-Jax. Thus, the crossclaim for indemnity cannot be sustained on the theory that Bil-Jax was the active tort feasor, because the verdict says that it was not. Builders suggests that if it is correct in its assertion that it is entitled to a new trial, that we should also reverse the judgment in favor of Bil-Jax, but in view of our decision here, we need not address that question.
*1006 Schmidt's contention that there was error in directing a verdict in favor of Builders on the negligence count cannot be sustained because no evidence of negligence was submitted which could sustain that count. During the dialogue between plaintiff's attorney, Builders' attorney and the court on the motion for directed verdict, plaintiff's attorney conceded that no evidence had been submitted to support the negligence claim, and the court agreed. There was no error in that ruling.
This leaves us only with the discussion of the issue of the sufficiency of the evidence to sustain the strict liability count against Builders as raised by its motion for directed verdict and for new trial, both of which were denied.
The standard for strict liability in Florida, established by West v. Caterpillar Tractor Company, 336 So.2d 80 (Fla. 1976), and recently recited in Ford Motor Co. v. Hill, 404 So.2d 1049 (Fla. 1981), is:
Strict liability should be imposed only when a product the manufacturer places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being. The user should be protected from unreasonably dangerous products or from a product fraught with unexpected dangers. In order to hold a manufacturer liable on the theory of strict liability in tort, the use must establish the manufacturer's relationship to the product in question, the defect and unreasonably dangerous condition of the product, and the existence of the proximate causal connection between such condition and the user's injuries or damages. (emphasis added).
336 So.2d at 86-87. The test of "unreasonable danger" is "whether a reasonable manufacturer would continue to market his product in the same condition as he sold it to plaintiff with knowledge of the potential dangerous consequences the trial just revealed." Auburn Machine Works Co., Inc. v. Jones, 366 So.2d 1167, 1170 (Fla. 1979). To hold the manufacturer liable, plaintiff must demonstrate the alleged defect existed when the product left the hands of the manufacturer. West; § 402A Restatement of Torts 2d, comment g. Thus, a directed verdict for the manufacturer has been found proper where the defect causing injury is attributable to improper maintenance of the product,[1] improper use,[2] or a part, after many years, simply wearing out.[3] The generally accepted definition of an "unreasonably dangerous" condition is one which an ordinary user would not expect;[4] thus changes in a product over a period of time, and the necessity for reasonable maintenance, are not defects. In Savage v. Jacobson Mfg. Co., 396 So.2d 731 (Fla.2d DCA 1981), the Second District Court of Appeal affirmed a summary judgment for a manufacturer where non-skid paint on a mowing tractor had worn off after four years. The court said:
A manufacturer cannot be expected to design products with component parts which will never wear out, regardless of the nature of use or maintenance. A manufacturer is entitled to anticipate that a consumer purchasing its product will use reasonable care in maintaining it. The product in this case was a relatively simple piece of agricultural equipment for use by farmers or harvesters who generally have some degree of experience in the maintenance of agricultural equipment. All persons who dealt with this particular wagon testified they knew that cotter keys will wear out and need to be replaced periodically.

*1007 ... .
A product is defective when the risks are greater than a reasonable buyer would expect. (citation omitted). A reasonable buyer ... should expect [this] product to contain consumable parts which require inspection and maintenance.
Id. at 733, quoting Foster v. Marshall, 341 So.2d 1354, 1361 (La. App. 1977). See generally, Annot, 13 ALR 3d 1057, § 6[e], Effect of defect or change occurring after product leaves defendant's hands (1967).
Here, plaintiff's expert testified that this type of locking device can jam when the hole into which the locking pin drops is not free from dust, cement and other debris of a construction job, and that a proper warning device should be attached to each section of the scaffold. However, the evidence is clear that the locking device worked perfectly well when Bil-Jax delivered it to Builders and that it worked equally well when Builders delivered it to the job site; and that the required warning device was affixed when the scaffolding left the manufacturer's hands. There was no evidence that the warning device was not still affixed to the scaffold which collapsed when it was delivered to the job by Builders.
Thus it appears that no "defect" in the scaffold was the proximate cause of this accident. Everyone appears to admit that had the lock dropped properly, the brace could not have come loose. According to the evidence, industry standards require that the person putting the scaffold together must check to determine if the brace is secure. As plaintiff agrees, dirt and other debris is unavoidable on construction sites, and so it follows that it is the user's job to test the brace before use to assure himself that this on-site condition has not jammed the hole. Failure to make the device foolproof does not in itself render the product "defective."
In Kroon v. Beech Aircraft Corp., 628 F.2d 891 (5th Cir.1980), an aircraft was equipped with a "gust-lock" system so that the movable airplane parts (rudder, etc.) would not be damaged by wind. The plane cannot take off with the gust-lock engaged, although it can maneuver on the ground. Release of the gust-lock is part of the pretake off check. Kroon, the pilot, did not check the controls before attempting take off; he sued the plane manufacturer for design defect in not designing a "fail-safe" gust-lock, i.e., the manufacturer should have prevented the plane from moving with the gust-lock engaged.
The Fifth Circuit, based on Florida law, affirmed summary judgment for the plane manufacturer. It was Kroon's responsibility to check the gust-lock; he was quite aware of it; "Kroon's negligence was the sole proximate cause of the accident." The situation is like a pilot taking off with only one gallon of fuel; "it strains reason to suggest that the failure to make the aircraft foolproof in that detail proximately causes the resulting disaster if an experienced pilot familiar with the particular aircraft were to take off without checking to see if he had sufficient fuel." 628 F.2d at 893-94. See also Watson v. Lucerne Mach. & Equip., Inc., 347 So.2d 459 (Fla.2d DCA 1977). In sum, the scaffold lock, five years old, to be checked by the user, is not "dangerous to an extent beyond that which would be contemplated by the ordinary consumer ..., with the ordinary knowledge common to the community as to its characteristics," and is thus not "unreasonably dangerous" under § 402A, Restatement, Torts, 2d, comment i; accord, Savage v. Jacobsen Mfg. Co., 396 So.2d 731 (Fla.2d DCA 1981); Foster v. Marshall, 341 So.2d 1354 (La. App. 1977).
We have considered the other issues asserted by the parties and find them without merit. The final judgment in favor of Schmidt and against Builders is reversed with directions to enter judgment for Builders. The other judgments appealed from are affirmed.
AFFIRMED in part, REVERSED in part, with directions.
DAUKSCH, C.J., and FRANK D. UPCHURCH, Jr., J., concur.
NOTES
[1] Rogers v. Unimac Co., Inc., 115 Ariz. 304, 565 P.2d 181 (1977) (automatic cut-off switch in commercial washer not maintained and not functioning; manufacturer not responsible to warn of dangers arising from improper maintenance).
[2] Ulrich v. Kasco Abrasives Co., 532 S.W.2d 197 (Ky. 1976) (grinder not unreasonably dangerous when run at 6000 RPM; warnings affixed to product; grinder run at 9000 RPM).
[3] Foster v. Marshall, 341 So.2d 1354 (La. App. 1977) ("cotter pin" holding trailer to truck wears out after ten years).
[4] See Auburn Machine Works v. Jones, 366 So.2d 1167 (Fla. 1979).