John **MENDEZ**, Plaintiff,

v.

**HONDA MOTOR CO., and American Honda Motor Co., Inc., Defendants.**

**No. 88–2301–CIV.**

United States District Court,
S.D. Florida.

May 22, 1990.

**482**

Charles R. Mindlin, Law Offices of Michael Weisberg, Miami, Fla., for plaintiff.

Ronald M. Owen, Parker, Johnson, Owen, McGuire & Michaud, Orlando, Fla., for defendants.

## AMENDED ORDER GRANTING PARTIAL SUMMARY JUDGMENT

NESBITT, District Judge.

THIS CAUSE came before the Court upon Defendant American Honda Motor

Company's motions to dismiss the complaint,[1] for partial summary judgment on Plaintiff's product liability claims, and for partial summary judgment on all negligence claims.

## I.  BACKGROUND

Defendant American Honda Motor Company ("Honda") is a distributor of the CR250R motorcycle, an off-road dirt bike, delivering unassembled, crated motorcycles to retailers from the manufacturer.[2]  Plaintiff, John Mendez, sues Honda for injuries he received as a result of an accident on a third-hand Honda CR250R motorcycle.  Mr. Mendez alleges that his accident occurred because the shock absorbers fractured while he was riding at high speeds along a dirt trail.  The shock absorbers on the motorcycle at the time of the accident allegedly are the original shocks.  Prior owners of the motorcycle, however, had removed and allegedly put aside the factory shocks, preferring to use high-performance shocks instead.  When Plaintiff then reinstalled the original shocks, he positioned them upside down.  Plaintiff did not consult the owner's manual or a mechanic before re-installing the shocks.  Although Honda does not admit that the shocks in question were the factory shocks, Honda concedes that they are of the same type originally installed on the motorcycle.  There is no dispute concerning the other facts stated above.

Plaintiff advances four theories of liability[3]:  1) Honda negligently manufactured or designed the motorcycle so that the shocks could be installed upside down, which resulted in increased stress on the shocks, causing them to break;  2) Honda negligently manufactured or designed the shocks so that they were unduly porous and prone to fracturing;  3) As a distribu-

---

1.  Defendant's motion to dismiss was mooted when Defendant filed an answer to Plaintiff's complaint.  The Court, however, is treating the motion as one for summary judgment. Fed.R. Civ.P. 12(b).  The parties were so notified in this Court's Order dated March 6, 1990.

2.  All claims against the manufacturer, Honda Motor Co., were dismissed pursuant to a joint stipulation entered March 2, 1990.

3.  Plaintiff also seemingly raises a fifth claim, failure to warn, in his second count of the complaint.  The Court will treat it as if it were clearly raised as an independent claim.

tor, Honda is strictly liable for the defective design or manufacture of the motorcycle which allowed the shock absorbed to be installed upside down; and 4) As a distributor, Honda is strictly liable for defects in the shock absorbers.

## II. ANALYSIS

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "there is no genuine issue as to any material fact and [if] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Rule 56(c) mandates summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to the case, on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Further, the non-moving party must raise an issue for trial by showing that there is sufficient evidence for a jury to return a verdict for the non-moving party. If the evidence is merely colorable or not significantly probative, summary judgment will be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

### A. *The Negligence Claims*

Defendant moves for summary judgment on Plaintiff's negligence claims because Honda merely distributed, rather than manufactured, the crated, unassembled motorcycles. In essence, Defendant contends that the alleged defects in the motorcycle are latent and that as a distributor, Honda cannot be held liable for these latent defects because Honda has no duty to inspect. As this Court's jurisdiction over this action is based on diversity of citizenship, whether Honda has a duty to inspect must be determined under Florida law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Although the law on this precise point is not well-developed, it is clear, by way of analogy, that a distributor need not inspect for latent defects unless the product is inherently dangerous. *See K–Mart Corp. v. Chairs, Inc.*, 506 So.2d 7, 8 n. 3 (Fla. 5th DCA 1987) (Retailers have no duty to inspect for latent defects.), *review denied*, 513 So.2d 1060 (Fla.1987); *Dayton Tire and Rubber Co. v. Davis*, 348 So.2d 575, 582 (Fla. 1st DCA 1977) (No duty to warn or inspect unless inherently dangerous.), *quashed on other grounds*, 358 So.2d 1339 (Fla.1978); *Odum v. Gulf Tire and Supply Company*, 196 F.Supp. 35 (N.D. Fla.1961) ("This Court holds that a retailer is not under a duty to inspect manufactured articles of a complex nature for defects which are latent."). The Court sees no reason to impose a greater duty on a distributor of a product than the duty imposed on a retailer. The only remaining question then is whether either a motorcycle or a shock absorber is an inherently dangerous product.[4] Again, little case law exactly on point exists, but the Florida Supreme Court has defined inherently dangerous products as those "burdened with a latent danger which derives from the very nature of the article itself." *Tampa Drug Co. v. Wait*, 103 So.2d 603, 608 (Fla.1958). the courts have thus found, for example, that tires are not inherently dangerous. *Dayton Tire, supra.* This Court cannot find a meaningful distinction between a tire and a shock absorber in terms of the duty to inspect. As to the motorcycle itself, the Court finds that it is not "burdened with a latent danger" when properly made and operated. *See O'Connor v. Kawasaki Motors Corp., U.S.A.*, 699 F.Supp. 1538 (S.D. Fla.1988) (Jet Ski not an inherently dangerous product.). Therefore, the Court holds that neither a shock absorber nor a motorcycle is inherently dangerous and that a distributor has no duty to inspect for latent defects.[5] Since there is no disputed issue

---

**4.** In addition, if Defendant had reason to know of the alleged defects, Defendant might have breached its duty to inspect. However, it is undisputed that Honda had no reason to know of the defects alleged by Plaintiff.

**5.** Nor does a distributor or a manufacturer have a duty to warn where the product is not inherently dangerous. *See, e.g., Tampa Drug Co. v. Wait, supra; O'Connor v. Kawasaki Motors Corp., U.S.A., supra,* 699 F.Supp. at 1542 ("A manufacturer or retailer has a strict duty to

of a material fact concerning Honda's status as a distributor or the latent nature of the defects, the Court must grant Defendant's motion for summary judgment on the negligence claims.

## B. *The Strict Liability Claims*

■ With respect to the last two claims, the strict liability counts, Defendant moves for summary judgment on the grounds that Plaintiff misused and modified the motorcycle. The parties agree that the Plaintiff was riding the Honda CR250R at high speeds, along a dirt trail, without a helmet. Moreover, it is clear that under Florida law, knowing misuse of a product is an affirmative defense to strict liability. *See, e.g., Clark v. Boeing Co.,* 395 So.2d 1226, 1229 (Fla. 3rd DCA 1981). The burden of proof, however, is on the defendant to show misuse, that is, to prove that the Plaintiff used the motorcycle in an abnormal manner. *Bernotas v. Harley Davidson, Inc.,* 543 F.Supp. 519, 521 (W.D. Pa.1982). In light of the CR250R's design as a dirt bike, the Court cannot say that as a matter of law the Plaintiff misused the motorcycle by riding it at high speeds along dirt trails. The Defendant has presented no evidence that the Plaintiff's actions were abnormal. Thus, summary judgment on the two strict liability claims is denied on the issue of misuse.

Defendant also contends that Plaintiff's mistake of installing the shock absorbers upside down precludes liability, because Plaintiff modified the Honda CR250R. Plaintiff contends that there was no modification, as Plaintiff simply reinstalled the original shocks. Indeed, Plaintiff submits that the Honda's design is defective insofar as Plaintiff could install the shocks upside down. Plaintiff admits, however, that the owner's manual clearly shows the correct method of installing the shocks.

■ The Court holds today that the manufacturer's failure to make it impossible for an untrained, inexperienced person to mount shock absorbers incorrectly is, as a matter of law, not a design defect. Plaintiff clearly misused the motorcycle by installing the shock absorbers, without referring to the owner's manual or any other source of information, upside down. We cannot say that the failure to design a product so that it cannot be misused is a design defect under Florida law.

■ The law is clear that, in Florida, the manufacturer is not to assume the role of insurer. *West v. Caterpillar Tractor Co.,* 336 So.2d 80 (Fla.1976). Moreover, the courts have held that "a manufacturer is, as a matter of law, under no duty to produce a fail-safe product, so long as the product poses no unreasonable dangers for consumer use." *Knox v. Delta International Machinery Corp.,* 554 So.2d 6, 7 (Fla. 3rd DCA 1989); *see also Husky Industries, Inc. v. Black,* 434 So.2d 988 (Fla. 4th DCA 1983) ("[A] manufacturer does not have to make a product accident proof."). Thus, in *Knox,* the court held that a jointer machine was not defectively designed simply because the plaintiff could misuse it, in that case, by detaching the safety guard.

Similar cases involving misuse abound. In *Kroon v. Beech Aircraft Corp.,* 628 F.2d 891, 893–94 (5th Cir.1980), the pilot was injured when he attempted to take off without releasing the "gust lock" system, which prevented many of the plane's moving parts from operating. He contended that the plane should have been designed so that it would not move unless the "gust lock" system had been disengaged. The court granted summary judgment for the defendant, stating that "it strains reason to suggest that the failure to make the airplane foolproof ... proximately cause[d] the resulting disaster...." Again, in *Clark v. Boeing Company, supra,* a flight attendant was injured when she opened the plane door to permit a passenger to board

---

warn only when the product is considered 'inherently dangerous'...."). As noted in footnote three, whether Plaintiff actually intends to raise a separate claim for failure to warn is less than clear from the pleadings. Plaintiff does not specify what danger Defendant was supposed to warn Plaintiff about. In any case, the Court holds that Defendant cannot be liable for the failure to warn because the product was not inherently dangerous and Defendant had no way of knowing of the defects Plaintiff alleges.

while the engines were operating. The court found that the flight attendant misused the airplane, and held that the manufacturer's failure to install a device to prevent the door from opening after the engines had been turned on was not a design defect. 395 So.2d at 1229.

Finally, in *Builders Shoring and Scaffolding Equipment v. Schmidt*, 411 So.2d 1004 (Fla. 5th DCA 1982), *petition denied*, 419 So.2d 1200 (Fla.1982), the court addressed whether a scaffold contained a design defect. The plaintiff was injured when the scaffolding at a construction site collapsed. The scaffold had to be broken down and reassembled on-site many times before the accident. 411 So.2d at 1005. The court held that

> it appears that no "defect" in the scaffold was the proximate cause of this accident. Everyone appears to admit that had the lock dropped properly, the brace could not have come loose. According to the evidence, industry standards require that the person putting the scaffold together must check to determine if the brace is secure. As plaintiff agrees, dirt and other debris is unavoidable on construction sites, and so it follows that it is the user's job to test the brace before use to assure himself that this on-site condition has not jammed the hole. *Failure to make the device foolproof does not itself render the product "defective."*

411 So.2d at 1007 (emphasis added).

In light of the foregoing cases, Honda cannot be held liable because it failed to make the task of mounting the shock absorbers foolproof. Plaintiff should have consulted the owner's manual or some other source of information that would have explained the proper method of mounting the shocks. Thus, the Court must grant the Defendant summary judgment with respect to Plaintiff's third claim that Defendant is strictly liable for the motorcycle's "design defect."

As to the Plaintiff's claim regarding the defect in the shock absorbers, a question of fact clearly exists concerning whether the shocks have been "modified," that is, whether the shocks on the motorcycle at the time of the accident were the ones originally on the motorcycle. Moreover, Defendant admits that Plaintiff has raised genuine questions concerning the condition of the shock absorbers at the time of the accident. Therefore, the Court denies Defendant's motion for summary judgment as to claim four. Accordingly, it is

ORDERED AND ADJUDGED that Defendant's motion for summary judgment as to Plaintiff's first three claims is GRANTED, and Defendant's motion is DENIED as to the fourth claim. Plaintiff may proceed to trial on the theory that the shock absorbers were defectively made or designed.