435 So.2d 331 (1983)
Paula B. HARDIN, Appellant,
v.
MONTGOMERY ELEVATOR COMPANY, a Delaware Corporation, Appellee.
No. AN-398.
District Court of Appeal of Florida, First District.
July 22, 1983.
*332 Carl Scott Schuler of the Law Offices of S. Thompson Tygart, Jr., P.A., Jacksonville, for appellant.
W. Douglas Childs of Bullock, Sharp, Childs, Mickler & Cohen, Jacksonville, for appellee.
ERVIN, Chief Judge.
Appellant, Paula B. Hardin (Hardin), appeals from the lower court's order dismissing with prejudice Count II of her two-count complaint, which alleged that appellee, Montgomery Elevator Company (Montgomery), be held strictly liable for design and manufacturing defects in one of its elevators. Hardin contends the lower court erred in finding as a matter of law that the elevator was not a product subject to strict liability. We agree and reverse.
The facts stated in the pleadings disclose that Montgomery manufactured an elevator which was in 1969 installed in a building on the campus of Florida Junior College in Jacksonville. On March 26, 1981, Hardin entered the elevator at the third floor, intending to descend to the first floor. It failed to stop, struck the bottom of the elevator shaft, resulting in serious injuries to Hardin.
The lower court granted Montgomery's motion to dismiss Count II, reasoning that a manufacturer may be held strictly liable only when it places allegedly defective products in the stream of commerce, "knowing the product is to be used without inspection for defects." As the elevator was routinely inspected by the Miami Elevator Company, the court found, as a matter of law, that the elevator was not a product which falls within the doctrine of strict liability. Hardin was given leave to amend Count II on the condition that she not re-allege strict liability. When Hardin filed her third amended complaint, again alleging strict liability in tort, the lower court dismissed Count II of that complaint with prejudice, thus allowing Hardin to proceed against the Miami Elevator Company as to Count I only, complaining of Miami *333 Elevator's negligent maintenance of the elevator.
Hardin contends the lower court erroneously concluded in granting the motion to dismiss that West v. Caterpillar Tractor Co., Inc., 336 So.2d 80 (Fla. 1976), provides an exception or defense to the theory of strict liability if the manufacturer can establish it put the product in the stream of commerce, knowing that it would not be used without inspection for defects. We agree that West does not provide such an exception. The history of section 402A of the Restatement of the Law of Torts (Second), involving strict tort liability as to products, discloses that the theory was developed when legal scholars and practitioners, dissatisfied with the application of contract concepts of privity and warranty, which were then necessary to establish liability for injuries resulting from defective products, pressed for a change. W. Prosser, Handbook of the Law of Torts § 98 (4th ed. 1971) [hereinafter: Prosser]. The American Law Institute, grappling with revisions for the second Restatement of Torts, proposed a strict liability standard which was, at first, limited to food and drink products but was, in a series of revisions, expanded to include products intended for "intimate bodily use" and then finally extended to include all products. Prosser, supra § 98 at 657 n. 51. In the midst of these revisions, the California Supreme Court first adopted the theory of strict products liability in Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal. Rptr. 697, 377 P.2d 897 (1962). Stating that the rationale behind imposing strict liability on the manufacturer is to "insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves", the California court announced the following rule:
A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being.
59 Cal.2d at 62-63, 27 Cal. Rptr. at 700-701, 377 P.2d at 900-901 (e.s.). Subsequent to Greenman, in 1965, the American Law Institute adopted its strict product liability standard. Conspicuously, the Greenman phrase that the lower court relied on in the case at bar, "knowing that it is to be used without inspection for defects," was omitted from the final draft, which provides:
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
Restatement (Second) of Torts § 402A (1965) [hereinafter: Restatement]. See also Wade, On the Nature of Strict Tort Liability for Products, 44 Miss.L.J. 825, 829 (1973).
It was not until 1976 that Florida joined the growing ranks of states that previously had adopted section 402A in its entirety, or had followed the California lead by adopting a substantial equivalent thereof. West, 336 So.2d at 87 n. 1. In West the Florida Supreme Court recognized the strict liability standard as set out in section 402A and, citing favorably from Greenman, stated that "[a] manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." 336 So.2d at 84. Before a manufacturer may be held liable under a strict liability *334 theory in Florida, the user of the product must establish
the manufacturer's relationship to the product in question, the defect and unreasonably dangerous condition of the product, and the existence of the proximate causal connection between such condition and the user's injuries or damages.
336 So.2d at 87. Finally, the court expressly "adopt[ed] the doctrine of strict liability as stated by the A.L.I. Restatement (Second) of Torts § 402A" for application in Florida. Id.
The controversy in this case arises because West quoted favorably from that language in Greenman which, as appellee contended and the lower court accepted, arguably may preclude liability if the manufacturer knew the product was not to be used without inspection for defects, while at the same time expressly adopting, in its entirety, section 402A of the Restatement which contains no such exemption. 336 So.2d at 84, 86, 87, 92. For the following reasons we interpret West as adopting section 402A in its entirety, without any intention of engrafting the questionable exception found in the language of Greenman.
Our search of case law and legal authorities has revealed very little explanation of the language chosen by the Greenman court in its adoption of strict liability. The later California Supreme Court case of Vandermark v. Ford Motor Company, 61 Cal.2d 256, 37 Cal. Rptr. 896, 391 P.2d 168 (1964), which further refined Greenman, suggests that a manufacturer's knowledge of a product's inspection at some point during its progress from manufacture to the ultimate user is not a circumstance which will insulate the manufacturer from liability. There the ultimate user received injuries caused by a defect in an automobile which was not only inspected by a succession of auto dealers before its purchase but was also, to some extent, modified by those dealers. The court stated:
Since Ford, as the manufacturer of the completed product, cannot delegate its duty to have its cars delivered to the ultimate purchaser free from dangerous defects, it cannot escape liability on the ground that the defect in Vandermark's car may have been caused by something one of its authorized dealers did or failed to do.
61 Cal.2d at 261, 37 Cal. Rptr. at 899, 391 P.2d at 171.
Among the authorities that have considered the meaning of the Greenman language, relating to the manufacturer's knowledge of later inspection for defects, the consensus supports Hardin's contention that no exception or defense is created to the imposition of strict liability by the fact that the manufacturer knows the product may, in some way, be inspected for defects before reaching the ultimate user. In adopting section 402A, the drafters state that the rule of strict liability recognized in section 402A "extends to any product sold in the condition, or substantially the same condition, in which it is expected to reach the ultimate user or consumer." Restatement, supra § 402A comment d (e.s.). Accord Prosser, supra § 99. Noting the still nascent quality of rules relating to the potential liability of sellers for defective products which are expected to undergo further processing or substantial change before reaching the ultimate user, the American Law Institute has refrained from taking a position on that issue. Nevertheless, as to completed products which will be subjected to routine, or periodic inspections, the section appears to apply. The following example is offered by the Institute:
[T]he seller of an automobile with a defective steering gear which breaks and injures the driver, can scarcely expect to be relieved of the responsibility by reason of the fact that the car is sold to a dealer who is expected to "service" it, adjust the brakes, mount and inflate the tires, and the like, before it is ready for use.
Restatement, supra § 402A comment p. Accord Prosser, Strict Liability to the Consumer in California, 18 Hastings L.J. 9, 23 (1966) [hereinafter: Strict Liability]; Prosser, supra § 99 at 660. That view is shared by another commentator who, in attempting to limit the importance of the phrase *335 "without inspection for defects", argues that
[a]nother point of unnecessary anxiety arises from the failure to read the court's language carefully, when it alludes to products placed on the market "knowing them to be used without inspection for defects" (which the writer submits means without inspection of the particular portion of the mechanism involved). This and similar language in . .. [Greenman and Vandermark], makes it clear that not every defect in a product will give rise to the application of strict liability, but only those for which the merchandiser knows or should know the purchaser cannot or will not make an inspection ....
* * * * * *
Obviously, this language ["without inspection for defects"] is not literally true. The liability will attach if the product is not to be inspected for the particular type of defect, or if the particular component of the product is not to be inspected. The merchandiser's liability exists, even though some inspection of some part of the chattel is expected and is, in fact, made.
Lascher, Strict Liability in Tort for Defective Products: The Road to and Past Vandermark, 38 S.Cal.L.Rev. 30, 48-49 (1965) (emphasis in original) [hereinafter: Lascher].[1]
The only case that we have found specifically interpreting the "without inspection for defects" language in Greenman, follows the reasoning of those authorities. In Haragan v. Union Oil Co., 312 F. Supp. 1392 (D.Alaska 1970), the federal district court was called upon to interpret and apply the law of the state of Alaska which had adopted the Greenman rule, rather than the express language of section 402A of the Restatement. There it was alleged that an alarm system, designed to detect and warn of the presence of dangerous gases on an oil drilling platform, was not sold by the manufacturer in a "ready-to-use" condition. Rather, the system required installation and testing before it was ready for actual use. It was further alleged that the defective design of the alarm system resulted in exposure to salt water, thereby causing corrosion of the internal workings of the system which in turn caused a failure of the system and the ultimate death of Haragan. The manufacturer, as in this case, sought to defend against imposition of strict products liability on the ground that the product was *336 not one which was to be used without inspection for defects. Rejecting that position the court stated:
[I]f the words "without inspection for defects" are given a strict and literal construction, few products could pass the test. The automobile is one of the most common products to which the rule of strict liability is applied. Yet every automobile purchaser is offered a "test-drive" by his seller; he has at least the opportunity to assure himself that the steering, engine, brakes, etc. are functioning. Such a "test-drive" is in a very real sense an inspection for defects... . The Court must therefore conclude that "without inspection for defects" means without that type of inspection which would reasonably be expected to uncover the sort of hidden defects that cause accidents.
312 F. Supp. at 1396.[2]
We are persuaded by the above authorities that Greenman is not to be interpreted so literally as to provide a defense to a manufacturer whose defective product is to undergo some sort of inspection before reaching the ultimate user of the product. Particularly compelling, we think, is the fact that the theory of strict liability has previously been applied to the manufacturers of elevators in a number of cases. See Knight v. Otis Elevator Co., 596 F.2d 84 (3d Cir.1979); Leaber v. Jolley Elevator Corp., 354 So.2d 746 (La. Ct. App. 1978); Austin v. Otis Elevator Co., 336 So.2d 914 (La. Ct. App. 1976). Still other courts have recognized that elevator manufacturers may, as a matter of law, be strictly liable for defective products, but have declined to apply the theory to a given factual situation. See Hinojasa v. Automatic Elevator Co., 92 Ill. App.3d 351, 48 Ill.Dec. 150, 416 N.E.2d 45 (1980); Rost v. C.F. & I. Steel Corp., 616 P.2d 383 (Mont. 1980); Seay v. General Elevator Co., 522 P.2d 1022 (Okl. 1974).
The manufacturer's knowledge that a product will be inspected at some point in time prior to its use is not irrelevant in determining the ultimate issue of fact in a strict products liability case: Whether the product was defective when it left the manufacturer. As Dean Prosser has noted, the plaintiff's burden of tracing a product's defect before it leaves the hands of the manufacturer is often difficult, if not impossible to establish. Circumstances relating to the lapse of time and the product's continued use are relevant in determining whether it is more probable that the product's defect occurred while in the possession of another, rather than by a cause attributable to the manufacturer. Strict Liability, supra at 54.[3]
Our treatment of the manufacturer's knowledge that the product will be inspected before its use as simply one factor bearing upon whether the plaintiff has met her burden in making out a prima facie case for strict liability is consistent with prior strict products liability decisions in Florida. For example, in Cassisi v. Maytag Co., 396 So.2d 1140 (Fla. 1st DCA 1981), we stated, that in "determining whether the product was defective while it was within the control of the manufacturer or distributor", several factors must be considered, including the "time elapsed from sale to injury" along with the product's age, "the length of the product's use, the severity of its use, the state of its repair, its expected useful life, and whether it was subjected to any abnormal operations." Id. at 1152. While the weighing of such evidence is ordinarily a task for the trier of fact, in some instances the court may be justified in determining the issue as a matter of law if

*337 the product which malfunctions is shown to be so old, so frequently repaired, and subjected to such rugged use, [that] its condition may be such as to negate any inference that it was defective at the time of its manufacture... .
Id. In a recent decision, the Fifth District Court of Appeal has similarly treated the issue of use without inspection for defects as one of many factors bearing upon the ultimate issue of whether a defect existed at the time of manufacture. The court observed that
a directed verdict for the manufacturer has been found proper where the defect causing injury is attributable to improper maintenance of the product, improper use, or a part, after many years, simply wearing out.
Builders Shoring and Scaffolding Equipment Company, Inc. v. Schmidt, 411 So.2d 1004, 1006 (Fla. 5th DCA 1982). See also Perez v. National Presto Industries, Inc., 431 So.2d 667, (Fla. 3d DCA 1983) (summary judgment for manufacturer affirmed where evidence showed no design or manufacturing defect, but only that over-pressure safety plug on twenty-three year old pressure cooker simply wore out).
To summarize, we hold that the lower court erred in finding, as a matter of law, that Montgomery could not be held strictly liable in tort for alleged design or manufacturing defects in the elevator in question. Whether the product is placed on the market by the manufacturer who knows it is not to be used "without inspection for defects" is not a defense to a claim of strict products liability under section 402A, as adopted by the Florida Supreme Court. That fact, however, along with such other factors, including the product's age, its length of use, severity of use, state of repair, expected useful life, subjection of the product to abnormal use, and its history of maintenance and repair, are all to be considered as parts of the entire fabric in determining whether the plaintiff has made a prima facie showing that the product was defective while still within the manufacturer's control.
REVERSED and REMANDED for further consistent proceedings.
WENTWORTH and NIMMONS, JJ., concur.
NOTES
[1] The distinction between the doctrine of strict products liability, as set out in § 402A, and that adopted by the California court in Greenman has been explained in the following manner:

Under the rule of strict liability as formulated in [§ 402A of] the Restatement, one who sells any product in a defective condition unreasonably dangerous to a user or consumer or his property is subject to liability for physical harm thereby caused to the ultimate user or consumer if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without substantial change in the condition; this rule applies though the seller has exercised all possible care in preparation and sale of his product, and the user or consumer has not bought the product from or entered into contractual relations with the seller.
* * * * * *
A statement of the rule of strict liability as enunciated in the leading case of Greenman v. Yuba Power Products, Inc., has ben [sic] specifically adopted or followed in a number of decisions, and under this rule it is held that a manufacturer or seller is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being. The phrase "without inspection for defects" within the meaning of this rule means without that type of inspection which would reasonably be expected to uncover the sort of hidden defects that cause accidents.
72 C.J.S. Products Liability § 8 (Supp. 1975) (e.s.).
At least one treatise on products liability, however, has taken language in Greenman literally, stating that "it seems that establishing the defective and unreasonably dangerous nature of a product requires that the plaintiff show the defendant's knowledge that the product would be used without the user's inspection for defects." 1 R. Hursh & H. Bailey, American Law of Products Liability, §§ 4:11 at 667, 4:32 (2d ed. 1974) (e.s.). These authors nonetheless recognize that it is inspection by the ultimate user and not some intermediary that is the determinative issue.
[2] Surprisingly, no subsequent decision has cited Haragan for its interpretation of the phrase "without inspection for defects", although several courts have relied on that case for its holding regarding the necessity of privity of contract in a breach of warranty action. See Smith v. Sturm, Ruger & Co., Inc., 524 F.2d 776 (9th Cir.1975); Anderson v. Fairchild Hiller Corp., 358 F. Supp. 976 (D.Alaska 1973); Morrow v. New Moon Homes, Inc., 548 P.2d 279 (Alaska, 1976); Adams v. Buffalo Forge Co., 443 A.2d 932 (Me. 1982).
[3] See also Lascher, supra at 52, maintaining that facts bearing on inspection or non-inspection relate more to a plaintiff's ability to make out a prima facie case, rather than to the operation of any affirmative defense.