491 So.2d 551 (1986)
EDWARD M. CHADBOURNE, INC., Petitioner,
v.
Algie F. VAUGHN, As Personal Representative of the Estate of Mary Emma Vaughn, and Algie F. Vaughn, Individually, Respondent.
No. 66413.
Supreme Court of Florida.
July 17, 1986.
*552 Millard L. Fretland and Donald H. Partington of Clark, Partington, Hart, Hart & Johnson, Pensacola, for petitioner.
Norton Bond, Pensacola, for respondent.
Charles J. Kahn, Jr. of Levin, Warfield, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, for The Academy of Florida Trial Lawyers, amicus curiae.
F. Alan Cummings of Holland & Knight, Tallahassee, for Florida Transp. Builders Ass'n, Inc., amicus curiae.
McDONALD, Chief Justice.
We have for review Vaughn v. Edward M. Chadbourne, Inc., 462 So.2d 512 (Fla. 1st DCA 1985), because we find conflict with Neuman v. Davis Water & Waste, Inc., 433 So.2d 559 (Fla. 2d DCA), review denied, 441 So.2d 632 (Fla. 1983), and Slavin v. Kay, 108 So.2d 462 (Fla. 1958). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We quash the district court decision in this case.
In October and November 1978 Edward E. Chadbourne, Inc. (Chadbourne) repaved County Road 1087 in Walton County pursuant to a Florida Department of Transportation (DOT) contract. Chadbourne manufactured and laid the paving materials. DOT tested the materials at Chadbourne's plant and at the construction site and found the materials to conform with state requirements. In April 1979, after the repaving work met all state tests and specifications, DOT returned the road to Walton County for maintenance. After this date, Chadbourne had no responsibility for any inspection or maintenance of the road and did not perform any further work or repairs.
Sometime in December 1980 a Walton County commissioner, in the performance of his official duties, inspected a section of the road where it curves to the west. This examination revealed that the southbound lane had eroded, creating approximately a two-inch dropoff in the pavement at the center of the road from the northbound lane to the southbound lane.
In January 1981, at least three weeks after the commissioner's investigation of the dropoff, the Vaughns had a one-car accident on County Road 1087 at the curve in the road where the pavement dropped off. While heading north, Mrs. Vaughn, the driver, caused her car's left wheels to enter the southbound lane, encountering the dropoff when traversing the centerline. Apparently to compensate for being in the wrong lane, Mrs. Vaughn turned the wheel of the car to return the car to its proper lane, thus reencountering the higher pavement of the northbound lane. The car consequently *553 went out of control and rolled over, killing Mrs. Vaughn and injuring Mr. Vaughn.
Vaughn filed suit against Chadbourne on the theories of negligence, warranty, and strict liability. The trial court granted summary judgment for Chadbourne but gave no reason for its decision. The district court of appeal, surmising that the summary judgment had been entered on a finding that the chain of proximate causation was broken when the defect became patent and was observed by the county, reversed. It held that the manufacturer of a product later incorporated into an improvement in real property is strictly liable for defects in that product and that the manufacturer is not absolved of liability even though the defect becomes patent and observable. 462 So.2d at 515.
In West v. Caterpillar Tractor Co., 336 So.2d 80, 86 (Fla. 1976), we stated that "strict liability should be applied only when a product the manufacturer places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." As adopted by this Court, an action sounding in strict liability requires the plaintiff to prove that (1) a product (2) produced by a manufacturer (3) was defective or created an unreasonably dangerous condition (4) that proximately caused (5) injury. Our review of the instant case reveals that Vaughn has failed to prove that a product proximately caused the instant injuries.
The parties differ as to the nature of the item at issue in this case. Vaughn argues that Chadbourne manufactured paving materials, which later happened to be incorporated into a roadway. Chadbourne on the other hand, argues that it did not sell paving materials, but rather delivered a constructed road. It was the road that was being used and not the raw material; no injury was caused by paving material, but was incurred while using the road.
We find that the public road Chadbourne constructed is not a product for purposes of the application of strict liability. DOT, the purchaser, has at least as much knowledge about road construction as does Chadbourne. It accepted the road after inspecting it. DOT invited Chadbourne's involvement in this repaving project by a sealed bid and not by soliciting buyers in the open market. Because of the nature of state highway contracts, the ability to reap profits at the expense of the consuming public is not present in a state bid situation. There is little disparity in bargaining power between DOT and Chadbourne. Finally, public roads are not available for purchase in the sense that they are offered in the stream of commerce in the way that, for instance, soft drinks or automobiles are. Hence, the principal policy reasons for invoking the doctrine of strict liability are absent here.[1]See generally Restatement (Second) of Torts § 402A comment c (1965); Prosser and Keeton On The Law of Torts 692-93 (W. Keeton 5th ed. 1984).
Another problem is that Vaughn has failed to make a prima facie showing that Chadbourne's acts proximately caused the injury. In West we stated that "[t]he ordinary rules of causation and the defenses applicable to negligence are available under our adoption of the Restatement rule." 336 So.2d at 90. There we specifically held that the manufacturer must *554 place the product in the market "knowing that it is to be used without inspection for defects." Id. at 92.
In the instant case we are faced with the fact that both the materials constituting the roadway and a highly knowledgeable and sophisticated purchaser extensively tested and examined the finished roadway consistent with state procedures. Further, responsibility for the maintenance and repair of the road rested with the county, not Chadbourne.[2] Finally, the defect in the roadway became patent. Indeed, a Walton County commissioner, acting within the scope of his official duties, knew of the problem and investigated it at least three weeks prior to the accident.
Under these facts Chadbourne is not proximately responsible for the injuries sustained by the Vaughns. Vaughn has argued to us that Slavin v. Kay, 108 So.2d 462 (Fla. 1958), cannot be applicable because Slavin concerned a contractor and Chadbourne, while also a contractor, is a party here in its role as a manufacturer because it supplied the asphalt for the road. We find this a distinction without meaning. The key to our holding in Slavin is the patentness of the defect or the owner's knowledge of the defect and the failure to remedy the defect, not whether the party is a contractor. It would be contrary to public policy as well as good common sense to hold a person, whether characterized as a manufacturer or a contractor, strictly liable when the defect is patent or known to the owner.
In conclusion we hold that strict liability does not lie in this case. Given the fact that the proximate cause issue denies recovery in all three theories of liability advanced by Vaughn in the trial court, we quash the decision of the district court and remand for reinstatement of the trial court's summary judgment.
It is so ordered.
BOYD, OVERTON and EHRLICH, JJ., concur.
ADKINS, J., dissents with an opinion, in which SHAW, J., concurs.
ADKINS, Justice, dissenting.
I must strongly dissent. The majority opinion departs from several established principles of Florida law, obfuscates rather than clarifies the analysis to be employed in strict liability cases, and, most regrettably, deprives the injured plaintiff in this case of his constitutionally guaranteed right of access to the courts. Art. I, § 21, Fla. Const.
While the majority properly begins its analysis with this Court's decision of West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976), it reaches a conclusion which is both plainly wrong and manifestly unsupported by the case law. In West, we held that "[i]n order to hold a manufacturer liable on the theory of strict liability in tort, the user must establish the manufacturer's relationship to the product in question, the defect and unreasonably dangerous condition of the product, and the existence of the proximate causal connection between such condition and the user's injuries or damages." 336 So.2d at 87. The majority apparently bases its conclusion that no trial is required on its construction of two of the above elements. First, it finds that Chadbourne sold no "product". Second, it concludes that, as a matter of law, Vaughn has failed to establish a prima facie case indicating that Chadbourne's acts may have proximately caused the injuries resulting from the admitted defect in the roadway. Neither conclusion finds support under the law, public policy, or common sense.
Prior to analyzing these elements, the case must be put in its proper perspective. Because the trial court resolved all claims in Chadbourne's favor through summary judgment, this Court is not acting in its appellate capacity in reviewing the case on the merits; Vaughn has never truly had his day in court. It should be kept in mind that the district court did not find Chadbourne strictly liable. That is, it did not determine the issues of causation, liability, *555 and comparative negligence. It merely remanded for trial on the issues, finding material issues of fact requiring jury resolution. The district court's decision should be affirmed, not quashed.
First, the majority errs in finding that no "product" is involved for purposes of strict liability analysis. Florida law clearly indicates that the paving mix manufactured and applied by Chadbourne is exactly such a product. In accepting Chadbourne's contention that "it did not sell paving materials, but rather delivered a constructed road," Majority op. at 553, the majority indulges a legal fiction which ill serves the policy reasons underlying the strict liability cause of action. In concluding that "the principal policy reasons for invoking the doctrine ... are absent here," id., the majority cites Restatement (Second) of Torts section 402A comment c (1965). That section should be set out in full:
On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.
It will be difficult indeed to encourage manufacturer accountability and to "insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves," Hardin v. Montgomery Elevator Co., 435 So.2d 331, 333 (Fla. 1st DCA 1983), quoting Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 63, 27 Cal. Rptr. 697, 701, 377 P.2d 897, 901 (Cal. 1962), when we are willing to stretch so far to conclude that no product is involved.
The decision of Abode Building Centers, Inc. v. Reynolds, 403 So.2d 1033 (Fla. 4th DCA), review denied, 411 So.2d 380 (Fla. 1981), reaches a more sound conclusion. In the case, a supplier of portland cement and mortar mix sold these products to contractors who combined them with sand and water to make a stucco mix. After the stucco damaged the exteriors of the houses to which it was applied, the residential owners sued the supplier on a strict liability theory for property damage. In finding that the supplier could be held liable to those who purchased the product and prepared it for use by an ultimate consumer by mixing it with water, the court found the cement and mortar mix a product for purposes of strict liability.
In this case, in which Chadbourne performed the functions of both the supplier and the contractors in Adobe, a yet more compelling case could be made that the paving mix involved was a product. Chadbourne's greater involvement with the pavement in this case points to greater and not lesser liability, and should offer no shield to resolution of the issues raised by the admitted defect, the fact of the accident, and the resulting grievous injuries. See also Halpryn v. Highland Insurance Co., 426 So.2d 1050 (Fla.3d DCA 1983) (paint on driveway is a product; proper inquiry focuses on defectiveness of that product); Savage v. Jacobsen Manufacturing Co., 396 So.2d 731 (Fla.2d DCA), review denied, 402 So.2d 612 (Fla. 1981).
The majority's focus upon the factors of the Department of Transportation's (DOT) knowledge of road construction, the bidding process, and the parties' respective bargaining positions is irrelevant. Any details of the relationship between the DOT and Chadbourne should not sensibly operate *556 to preclude a trial when an innocent third party, the intended ultimate consumer, suffers an injury from an admitted defect in the road. See Note, Vaughn v. Chadbourne: Strict Liability and the Road that Faded Away, 40 U. Miami L.Rev. 359 (1985).
The central error in the majority's opinion lays in its conclusion that Vaughn has failed to make a prima facie case showing that Chadbourne's acts proximately caused the injury. First, it is a basic and unanimous proposition of Florida law that proximate cause is a question of fact properly determined by the jury. Rimes v. H.F. Mason Equipment Corp., 483 So.2d 782 (Fla.3d DCA 1986); Echols v. Hammett Co., Inc., 423 So.2d 923 (Fla. 4th DCA 1982), cert. denied, 434 So.2d 887 (Fla. 1983); Cassisi v. Maytag Co., 396 So.2d 1140 (Fla. 1st DCA 1981).
Second, the majority apparently bases its conclusion as to proximate cause on the following language contained in West:
[A] manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being.
336 So.2d at 92 (emphasis supplied). The majority's focus upon the emphasized language, quoted in West from the California Supreme Court's decision of Greenman v. Yuba Power Products, Inc. is unjustified. As noted in the thorough analysis of the First District Court of Appeal in Hardin, the language from Greenman, penned in 1962 and conspicuously absent in the restatement as subsequently adopted, should serve as no bar to liability for the seller or manufacturer of a defective product. The language is similarly absent from the truly operative elements of a case in strict liability, set forth in West as follows:
In order to hold a manufacturer liable on the theory of strict liability in tort, the user must establish the manufacturer's relationship to the product in question, the defect and unreasonably dangerous condition of the product, and the existence of the proximate causal connection between such condition and the user's injuries or damages.
336 So.2d at 87. The overwhelming weight of authority, including subsequent California decisions such as Vandermark v. Ford Motor Co., 61 Cal.2d 256, 37 Cal. Rptr. 896, 391 P.2d 168 (Cal. 1964), indicates that knowledge of further inspection may not itself absolve a tortfeasor of liability. Such knowledge is relevant, however, to the issue of whether the product was defective when it left the manufacturer. See Hardin, 435 So.2d at 336, quoting Haragan v. Union Oil Co., 312 F. Supp. 1392, 1396 (D.Alaska 1970) ("[I]f the words `without inspection for defects' are given a strict and literal construction, few products could pass the test."); Note, 40 U. Miami L.Rev. at 363, fn. 30.
Thus is another question raised for the jury. The DOT's testing of the road, as well as its duty to maintain and repair it, as cited by the majority, should by no means finally resolve the question of Chadbourne's liability. It may be the case that the manufacturer did not create, sell and apply a defective product, but the evidence certainly raises a question on the issue. As the injury in question occurred only two years after the laying of the pavement, and the road was admittedly defective, the paving mix was far from a product "shown to be so old, so frequently repaired, and subjected to such rugged use", Cassisi, 396 So.2d at 1152, as to allow determination of the question as a matter of law.
The majority apparently applies the decision of Slavin v. Kay, 108 So.2d 462 (Fla. 1958), in finding that the patentness of the defect in some manner exonerates Chadbourne as a matter of law. The majority erred in its application of Slavin rather than our more recent decision of Auburn Machine Works Co., Inc. v. Jones, 366 So.2d 1167 (Fla. 1979). Slavin represents precisely the type of case containing "distinctions [which] frequently have more theoretical than practical significance" condemned *557 in West. 336 So.2d at 84. The Slavin decision, decided well before the adoption of either strict liability in tort, West, or comparative negligence, Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), frankly has no place in modern tort law.
Slavin is best understood as a strained effort by this Court to allow an injured motel guest to sue a contractor with whom he was not in privity. In apportioning responsibility among the parties, the Court distinguished between patent and latent defects. Under the "accepted work" doctrine, the motel owner could be held liable through "intervening fault", and the contractor exonerated, if the apparentness of the defect indicated the owner's knowing assumption of the risks involved. Slavin, now cut loose of its historical moorings and simply unnecessary, is flatly inconsistent with the current law of this state equating liability with fault. Under modern principles of comparative negligence the contractor, the hotel owner, or the guest could be found wholly or partially negligent, and liability would be assessed accordingly.
Our decision of Auburn Machine Works bears much more forcefully on the instant case. In Auburn, we unanimously held that:
We reject the [patent danger] doctrine and hold that the obviousness of the hazard is not an exception to liability on the part of the manufacturer but rather is a defense by which the manufacturer may show that the plaintiff did not exercise a reasonable degree of care as required by the circumstances. We also conclude that the principles of comparative negligence apply where this defense is raised.
366 So.2d at 1167. Otherwise, this Court noted, manufacturers would be encouraged to "be outrageous in their design, to eliminate safety devices, and to make hazards obvious." Id. at 1170. Similar principles of accountability should be involved in this case.
Auburn is additionally notable for its consideration of the principles involved in comparative negligence. The Court noted that:
In West we concluded that contributory negligence is available in determining the apportionment of the negligence of the manufacturer of the alleged defective product and the negligence of the consumer, and we emphasized that the ordinary rules of causation and the defenses applicable to negligence are available.
Id. at 1172. It should be noted that the instant majority opinion, while quoting West for the proposition that "[t]he ordinary rules of causation and the defenses applicable to negligence are available under our adoption of the Restatement Rule," Majority op. at 554, quoting West, 336 So.2d at 90, reaches a conclusion which starkly conflicts with that reached in Auburn. Rather than applying principles of comparative negligence, which is the law, the majority applies the highly unordinary and outmoded doctrine of "patent danger."
We lack sufficient information, on the facts as given, to determine conclusively the existence or degree of the DOT's negligence in this case. It is possible that DOT was negligent, but a jury could as easily find that the extensive testing which failed to disclose the defect pointed to the defect's latency, and Chadbourne's corresponding liability. It is important to note, at any rate, that under West and Auburn even the Vaughns' negligence in this case would not bar their right to trial. Why, then, should the possible (and not even certain) negligence of a third party act as such a bar? I cannot agree with the majority's anomalous conclusion.
In summary, the majority errs first in finding that no "product" is involved in Chadbourne's manufacturing and application of the paving mix. Second, the majority's resolution of the question of proximate cause as a matter of law rather than a factual question represents an unwarranted departure from sound legal principles. Neither Chadbourne's knowledge that the road was to be inspected for defects nor the alleged patency of the defect properly *558 absolves Chadbourne of liability as a matter of law; each factor rather cries out for a jury's consideration in evaluating any comparative negligence involved.
Because the majority opinion would deny the plaintiff a proper resolution of these issues without the trial to which he is entitled under these circumstances, Martinez v. Clark Equipment Co., 382 So.2d 878 (Fla.3d DCA 1980); Clement v. Rousselle Corp., 372 So.2d 1156 (Fla. 1st DCA 1979), cert. denied, 383 So.2d 1191 (Fla. 1980), I must dissent. I would remand with instructions to remand for a trial on the merits.
SHAW, J., concurs.
NOTES
[1] This is not to say that Chadbourne would in every sense or instance be immune to a strict liability suit for the manufacture and sale of asphalt mix or even a roadway. While we do not today decide these issues, assume, for instance, that Chadbourne sold bags of asphalt mix in hardware or home repair stores and that the Vaughns purchased a bag of mix and, though they used it consistent with its directions, they nevertheless were burned by the mix or overcome by fumes. In such a situation it might be possible to argue successfully that the asphalt is a product subject to strict liability standards. Similarly, assume Chadbourne held itself out to the public as a paver of private roadways. If Vaughn had Chadbourne prepare and pave a private roadway or driveway that later disintegrated during a rainstorm, with the remains of the road subsequently entering and polluting Vaughn's water supply, a strict liability action might also be proper.
[2] Vaughn also sued the county.